## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 21-cv-3537 |
| v. | ) ) | |
| METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO, CITY OF CHICAGO, | ) ) ) ) | |
| Defendants. | ) ) | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446, Defendant City of Chicago, by and through its attorney, Celia Meza, Corporation Counsel for the City, hereby removes this action from the Circuit Court of Cook County, Illinois, County Department, Law Division, to the United States District Court for the Northern District of Illinois, Eastern Division. The City states the following as its grounds for removal:

1. On May 14, 2021, Plaintiff filed its Complaint in the Circuit Court of Cook County, Illinois, County Department, Law Division, captioned *Travelers Property Casualty Company of America v. Metropolitan Water Reclamation District of Greater Chicago & City of Chicago*, Case No. 2021 L 004971 ("Lawsuit"). In accordance with 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders received by the City are attached hereto and incorporated herewith as Exhibit 1.

2. In the Complaint, Plaintiff alleges that the Metropolitan Water Reclamation District of Greater Chicago ("MWRDGA") and the City violated the Fifth Amendment of the United States Constitution by taking private property of the owner of the Willis Tower without just compensation based upon a temporary flooding of the tower. *See* Compl., Cts. III, VI. Plaintiff also brings Illinois

takings claims, *id.*, Cts. I, II, IV, V, common law negligence claims, *id.*, Cts. VII, VIII, and statutory claims, *id.*, Cts. IX-XII, arising from the alleged temporary flooding incident.

3.     This removal is timely because Plaintiff served the Complaint on the City on June 7, 2021, and this Notice of Removal is being filed by the City within 30 days of service in accordance with 28 U.S.C. § 1446(b)(3) and Federal Rule of Civil Procedure 6(a).

4.     Removal is proper under 28 U.S.C. § 1441, which authorizes removal of any action over which the federal courts have original jurisdiction. Plaintiff brings takings claims under the United States Constitution. Accordingly, federal question jurisdiction exists under 28 U.S.C. § 1331. To the extent the Complaint alleges non-federal claims, this Court has supplemental jurisdiction under 28 U.S.C. § 1367 because those claims arise out of the same operative facts as Plaintiffs' federal constitutional claims and "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

5.     Venue is proper in this District Court under 28 U.S.C. § 1441(a) because it is the district and division within which the Lawsuit is pending.

6.     MWRDGA, a co-defendant, has consented to this removal under 28 U.S.C. § 1446(b)(2)(A). *See* Consent to Removal, attached as Exhibit 2.

7.     Written notice of this Notice of Removal to federal court is being contemporaneously filed with the Circuit Court of Cook County, Illinois, and a copy of that filing will be served on all parties involved in accordance with 28 U.S.C. § 1446(d).

8.     If any questions arise as to the propriety of this removal action, the City respectfully requests an opportunity to present a brief and oral argument in support of its position that this case is removable. *See Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000) (citing general rule that post-removal evidence in assessing removal jurisdiction may be considered by

the Court and a district court may elicit or review evidence outside of the removal petition); *see also Harmon v. OKI Sys.*, 115 F.3d 477 (7th Cir. 1997) (where district court relied upon post-removal answers to interrogatories to determine whether removal jurisdiction was proper).

WHEREFORE Defendant City of Chicago hereby gives notice that the Lawsuit is removed from the Circuit Court of Cook County, Illinois to the United States District Court for the Northern District of Illinois, Eastern Division.

Respectfully submitted,

DATE: July 6, 2021                                /s/ Jordan A. Rosen

Jordan A. Rosen
Assistant Corporation Counsel
City of Chicago, Department of Law
Constitutional & Commercial Lit. Div.
2 N. LaSalle St., Suite 520
Chicago, IL 60602
312-744-9018
Jordan.Rosen@cityofchicago.org

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2021, I electronically filed the foregoing **Notice of Removal**

with the clerk of the court using the CM/ECF system, which will send notification of such filing

to the email addresses denoted on the electronic Mail Notice list.

I also certify that I served a copy of the foregoing **Notice of Removal** upon the following

by first-class U.S. mail, postage prepaid, and by email:

/s/ Jordan A. Rosen
Assistant Corporation Counsel


Maisel & Associates
P.O. Box 64093
St. Paul, MN 55164-0093
312-458-6500
RPMLaw1@Travelers.com

Steven R. Johnson
Bart R. Zimmer
Langhenry, Gillen, Lundquist & Johnson, LLC
33 N. Dearborn St., Suite 1600
SJohnson@LGLFirm.com

Susan T. Morakalis
General Counsel
Metropolitan Water Reclamation Dist.
of Greater Chicago
100 E. Erie Street
Chicago, IL 60611
Morakaliss@mwrd.org
MihalopouloJ@mwrd.org
Foukasa@mwrd.org
PowellJ@mwrd.org

# EXHIBIT 1



FILED DATE: 5/14/2021 10:35 AM 2021L004971

RECEIVED
2021 JUN -7 AM 8:06
OFFICE OF THE
CITY CLERK

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| Summons - Alias Summons | | (03/15/21) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Travelers Property Casualty Company of
America

Plaintiff(s)

v.

City of Chicago

Defendant(s)

121 North LaSalle Street, Suite 600,
Chicago, IL 60602

Address of Defendant(s)

Case No. __2021L004971__

RECEIVED
2021 JUN -7 AM 8:06
OFFICE OF THE
CITY CLERK

RECEIVED
JUN - 8 2021
DEPARTMENT OF LAW

Please serve as follows (check one):  ☐ Certified Mail  ☑ Sheriff Service  ☐ Alias

### SUMMONS

To each Defendant:  City of Chicago, 121 North LaSalle Street, Suite 600, Chicago, IL 60602

You have been named a defendant in the complaint in this case, a copy of which is hereto attached.
You are summoned and required to file your appearance, in the office of the clerk of this court,
within 30 days after service of this summons, not counting the day of service. If you fail to do so, a
judgment by default may be entered against you for the relief asked in the complaint.

### THERE IS A FEE TO FILE YOUR APPEARANCE.

**FILING AN APPEARANCE:** **Your appearance date is NOT a court date.**  It is the deadline
for filing your appearance/answer.  To file your appearance/answer **YOU DO NOT NEED
TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/
answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/
approved/procedures/appearance.asp.  After completing and saving your Appearance form, you can
electronically file (e-File) it with the circuit clerk's office.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**

cookcountyclerkofcourt.org

Page 1 of 3

**Summons - Alias Summons**                                      **(03/15/21) CCG 0001 B**

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www. cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

Atty. No.: 44700

Pro Se 99500

Witness date _____

5/14/2021 10:35 AM IRIS Y. MARTINEZ

Name: Langhenry, Gillen, Lundquist & Johnson, LLC

Atty. for (if applicable):                                    Iris Y. Martinez, Clerk of Court

Plaintiff

☐ Service by Certified Mail: _____

Address: 311 S. County Farm Road, Suite L

☐ Date of Service: _____

City: Wheaton                                  (To be inserted by officer on copy left with employer or other person)

State: IL   Zip: 60187

Telephone: 630-653-5775

Primary Email: sjohnson@lglfirm.com

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**

cookcountyclerkofcourt.org

FILED DATE: 5/14/2021 10:35 AM   2021L004971

FILED DATE: 5/14/2021 10:35 AM   2021L004971

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info:   (312) 325-9500

### LAW DIVISION
**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-6441

### ALL SUBURBAN CASE TYPES
### DISTRICT 2 - SKOKIE
**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info:   (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info:   (847) 818-3000

### DISTRICT 4 - MAYWOOD
**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info:   (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info:   (708) 974-6500

### DISTRICT 6 - MARKHAM
**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info:   (708) 232-4551

FILED DATE: 5/14/2021 10:35 AM  2021L004971

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |

Summons - Alias Summons                                           (03/15/21) CCG 0001 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Travelers Property Casualty Company of
America

Plaintiff(s)

v.

City of Chicago

Case No.     **2021L004971**

Defendant(s)

121 North LaSalle Street, Suite 600,
Chicago, IL 60602

Address of Defendant(s)

Please serve as follows (check one):    Certified Mail    • Sheriff Service    Alias

### SUMMONS

To each Defendant:   City of Chicago, 121 North LaSalle Street, Suite 600, Chicago, IL 60602

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

### THERE IS A FEE TO FILE YOUR APPEARANCE.

**FILING AN APPEARANCE: Your appearance date is NOT a court date.** It is the deadline for filing your appearance/answer. To file your appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/ answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/ approved/procedures/appearance.asp. After completing and saving your Appearance form, you can electronically file (e-File) it with the circuit clerk's office.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

**Summons - Alias Summons** (03/15/21) CCG 0001 B

FILED DATE: 5/14/2021 10:35 AM 2021L004971

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www. cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

Atty. No.: 44700

Pro Se 99500

Witness date _____

5/14/2021 10:35 AM IRIS Y. MARTINEZ

Name: Langhenry, Gillen, Lundquist & Johnson, LLC

Atty. for (if applicable):

Iris Y. Martinez, Clerk of Court

Plaintiff

☐ Service by Certified Mail: _____

Address: 311 S. County Farm Road, Suite L

☐ Date of Service: _____
(To be inserted by officer on copy left with employer or other person)

City: Wheaton

State: IL   Zip: 60187

Telephone: 630-653-5775

Primary Email: sjohnson@lglfirm.com

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

FILED DATE: 5/14/2021 10:35 AM    2021L004971

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info:    (312) 325-9500

### LAW DIVISION
**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE
**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info:    (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info:    (847) 818-3000

### DISTRICT 4 - MAYWOOD
**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info:    (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info:    (708) 974-6500

### DISTRICT 6 - MARKHAM
**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info:    (708) 232-4551

**12-Person Jury**

FILED
5/14/2021 10:35 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021L004971

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, <br> Plaintiff, <br><br> vs. <br><br> METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO & CITY OF CHICAGO, <br><br> Defendants. <br><br> T.Y. LIN INTERNATIONAL GROUP, BENCHMARK CONSTRUCTION CO., F.H. PASCHEN CONSTRUCSTION CABO JOINT VENTURE, TRANSYSTEMS, BLOOM COMPLANIES, LLC. SINGH & ASSOCIATES, INC. CAROL R. JOHNSON ASSOCIATES, INC. a/k/a CRJA-IBI-GROUP, AB& H, EJM ENGINEERING, INC. AECOM, HBK ENGINEERING, LLC. CENTRAL a/k/a LAWN SPRINKLERS, INC. US ARMY CORPS OF ENGINEERS. <br><br> Respondents in Discovery. | **2021L004971** <br><br> CASE NO. _____ <br><br> JURY DEMAND |

**COMPLAINT AT LAW**

Now comes Plaintiff, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, by and through their attorneys, MAISEL & ASSOCIATES and LANGHENRY, GILLEN, LUNDQUIST & JOHNSON, LLC, and as its Complaint against Defendants, METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO ("MWRD") and the CITY OF CHICAGO ("CITY"), states as follows:

FILED DATE: 5/14/2021 10:35 AM    2021L004971

1

FILED DATE: 5/14/2021 10:35 AM   2021L004971

## THE PARTIES

1. BRE 312 OWNER, LLC ("Owner"), is a foreign corporation registered with the Illinois Secretary of State Corporations Division with its principal offices at 233 S. Wacker Drive, #4200, Chicago, Illinois 60602.

2. At all times relevant to this complaint, Owner was the owner and operator of the historical high-rise commercial building at 233 S. Wacker Drive in the City of Chicago, Illinois, originally known as the SEARS TOWER and currently named WILLIS TOWER ("WILLIS TOWER").

3. At all times relevant to the allegations in this complaint, Plaintiff, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA ("TRAVELERS"), was a property casualty affiliate of the TRAVELERS INDEMNITY COMPANY that provided a builders-risk policy of insurance to Owner for construction remodeling work being performed at the WILLIS TOWER at 233 S. Wacker Drive in Chicago, Illinois 60606, during May 2020 and beforehand.

4. As a result of problems with the operation of the combination sewer/stormwater system, the WILLIS TOWER, 233 S. Wacker Drive in the City of Chicago, Illinois, on May 17, 2020, and May 18, 2020, was inundated with over a million gallons of non-potable water.

5. As a result of the above-mentioned flooding, Owner sustained property damage and other damage to the subject building, damage and delay to ongoing construction projects, and damages related to its operations.

6. Owner submitted insurance claims to TRAVELERS for the damage to the WILLIS TOWER building, for damage to its ongoing construction project, and for damages related to delays to its ongoing construction work.

FILED DATE: 5/14/2021 10:35 AM    2021L004971

7.  TRAVELERS, pursuant to the applicable insurance policy issued to Owner, had a duty to indemnify Owner for covered damages related to the above-mentioned event at the WILLIS TOWER building, including covered damage to Owner's ongoing construction project, and covered damages related to delays to Owner's ongoing construction work.

8.  Pursuant to the above-mentioned duty to indemnify, TRAVELERS has made payments and will continue to make payments to and on behalf of Owner for damage and losses to the building's property and for damages and losses associated with the ongoing construction work as well as other expenses incurred on account of the May 17, 2020, and May 18, 2020, water intrusions at the WILLIS TOWER.

9.  As a result of these payments, TRAVELERS has become subrogated to the rights of Owner against any person or entity causing these damages, including, but not limited to, any defendants named in this complaint.

10. Defendant METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO ("MWRD") is a Cook County local public governmental entity created by the Metropolitan Water Reclamation District Act, 70 ILCS 70 ILCS 2605/1 ("Act") and conducts continuous and systematic governmental business within Cook County.

11. MWRD developed the Cook County Stormwater Management Plan ("CCSMP"), which provides the framework for the stormwater management program and addresses stormwater management issues through proper watershed regulations and watershed planning. Through the CCSMP, MWRD has authority to plan, implement, finance, and operate local stormwater management projects.

12. MWRD constructed the Tunnel and Reservoir Plan ("TARP"), which, in part, is designed to reduce flooding.

3

FILED DATE: 5/14/2021 10:35 AM   2021L004971

13. MWRD also developed Detailed Watershed Plans (DWPs) for the watersheds in Cook County in order to identify flooding related problems in the watersheds.

14. On information and belief, at all times relevant herein, Defendant MWRD had the authority to plan, manage, implement, control, and finance activities relating to stormwater management in Cook County, including the areas surrounding the WILLIS TOWER.

15. On information and belief, Defendant CITY OF CHICAGO ("CITY") is a local public entity and conducts continuous and systematic governmental business within Cook County. CITY is a governmental agency that owns, maintains, manages, controls, and regulates the streets, watersheds, waterways, and stormwater and sewage systems in Cook County.

16. On information and belief, at all times relevant herein, Defendant CITY had the authority to plan, manage, implement, control, and finance activities relating to stormwater management in Cook County, including the areas surrounding the WILLIS TOWER.

17. On information and belief, at all times relevant to this complaint, the Defendants, MWRD and/or CITY, individually and/or jointly were responsible for the design, construction, maintenance, and operation of the local and regional integrated sewer system servicing the City of Chicago, including those located at, in, or servicing Lower Wacker Drive in the City of Chicago at or near properties on South Wacker Drive, such as the WILLIS TOWER.

18. On information and belief, at all times relevant to this complaint, the Defendants, MWRD and/or CITY, individually and/or jointly, were the owners and in control of all drains, basins, structures, components, and local and regional integrated sewer systems located at, in, or servicing Lower Wacker Drive in the City of Chicago at or near properties on South Wacker Drive, such as the WILLIS TOWER.

FILED DATE: 5/14/2021 10:35 AM 2021L004971

19. On information and belief, at all times relevant to this complaint, the Defendants, MWRD and/or CITY, constructed the combined storm water and sanitary sewer system ("Combined Chicago System") that collects domestic sewage and storm water within the City and conveys it to the Metropolitan Water Reclamation District of Greater Chicago for treatment and/or via the Chicago Area Waterway System ("CAWS").

20. On information and belief, at all times relevant to this complaint, the Defendants, MWRD and/or CITY, constructed the Combined Chicago System with back flow preventers to block water from the Chicago River from flowing into the sewer system and/or causing damage to other property.

21. Defendants, MWRD and/or CITY, allowed water from the Chicago River to backflow through the storm water sewer system along Lower Wacker Drive, overflowing catch basin drains causing flooding and inundating Willis Tower with over a million gallons of non-potable water on or about May 17-18, 2020.

## **FACTUAL BACKGROUND**

22. On or about and before May 6, 2020, Defendants, individually or jointly, had weather forecasting information predicting heavy rainfall beginning May 16, 2020.

23. On May 16, 2020, Defendants, individually or jointly, had a weather forecast of a 70% chance of 1.50 inches of rain.

24. On May 16, 2020, Defendants, individually or jointly, had a weather forecast of a 30% chance of 3.00 inches of rain.

25. At all times relevant to this complaint, Defendants, individually or jointly, managed and controlled the height of the Chicago River ("River"), including the height of the River as measured at the elevation gauge at the Chicago River Lock & Controlling Works.

FILED DATE: 5/14/2021 10:35 AM  2021L004971

26. On May 16, 2020, the Defendants, individually or jointly, had a weather forecast requiring them to lower the water level as measured at the elevation gauge at the Chicago River Lock & Controlling Works to -3.00 CCD.

27. At the time MWRD received the weather forecast of a 70% chance of 1.50 inches of rain on May 16, 2016, Defendants, individually or jointly, knew the critical elevation at the Chicago River Lock & Controlling Works was -2.67 CCD.

28. On information and belief, the water level at the Chicago River Lock & Controlling Works was never lowered to -3.00 CCD between the storm prediction on May 16, 2020, and the time of the water inundation at the Willis Tower.

29. On or about and before May 16, 2020, Defendants, individually or jointly, had information that Lake Michigan was at or near historic high-water levels.

30. On or about and before May 16, 2020, Defendants, individually or jointly, had information that Lake Michigan was at a level higher than the River without any additional rainfall events.

31. On information and belief, on May 16, 2020, Defendant MWRD was aware of an ongoing storm reaching average rainfall of 3.5 inches at the North, Central, and South Basins.

32. On May 17, 2020, the City of Chicago and its entire metropolitan and suburban region experienced a significant rainfall event that lasted throughout the day. Defendant MWRD was aware of critical elevations of the Chicago Area Waterway Systems at the Wilmette Pump Station, Chicago River Controlling Works ("CRCW"), O'Brien Lock, and Dam and Cal-Sag Junction.

33. On or about the evening of May 17, 2020, Defendant MWRD opened the locks and gates at CRCW to Lake Michigan. (Attached as Exhibit A are emails and communications detailing activity by the MWRD).

FILED DATE: 5/14/2021 10:35 AM 2021L004971

34. On or about May 17, 2020, Defendant MWRD intentionally opened the floodgates and/or locks of the River.

35. On or about and before May 17, 2020, certain gates were not opened or were only partially opened, which allowed water levels in the River to rise well above flood stage and overwhelm the sewer system and cause it to fail.

36. Defendant CITY and/or Defendant MWRD owned, designed, maintained, managed, renovated, regulated, and constructed the streets, watersheds, waterways, stormwater and sewage systems, and other flood mitigation structures in Cook County, including the areas surrounding the WILLIS TOWER property.

37. Defendant MWRD's flooding of private property in the affected metropolitan area was foreseeable because MWRD knew or should have known that the system it had constructed, operated, and/or maintained was inadequate and would result in flooding of adjacent properties.

38. Defendant CITY knew or should have known that the flood mitigation systems it had constructed, operated, and/or maintained were inadequate and would result in flooding of adjacent properties.

39. Due to faulty construction, operation, and/or maintenance of the above-referenced systems, Defendants knew or should have known the systems were inadequate and that this inadequacy would result in the flooding of adjacent property such as the WILLIS TOWER during an anticipated rainfall event with sufficient time to redirect the flow of water away from Owner's property.

40. By operating systems that they knew were inadequate, Defendants CITY and MWRD took the property of Owner without just compensation in violation of the Takings Clause of Article I,

FILED DATE: 5/14/2021 10:35 AM 2021L004971

Section 15 of the Illinois Constitution and the Fifth Amendment to the Constitution of the United States.

41. As a direct and proximate result of the conduct of the Defendants, MWRD and CITY, individually and jointly, as alleged above, the Defendants damaged Owner's real and personal property without just compensation in violation of the Takings Clause of Article I, Section 15 of the Illinois Constitution and caused other losses of income and expenses.

42. As a direct and proximate result of Defendants', MWRD's and CITY's, actions, individually and jointly, as alleged above, the Defendants took and/or damaged the property of Owner without just compensation causing damage to real and personal property and other losses of income and for expenses to Owner, in excess of FOURTEEN MILLION DOLLARS ($14,000,000).

43. As a direct and proximate result of Defendants', MWRD's and CITY's, actions, individually and/or jointly, the Defendants took and/or damaged Owner's property without just compensation, and TRAVELERS has made payments and continues to make payments to and on behalf of its insured for property damage and other losses occasioned by the Defendants' conduct thereby becoming a *bona fide* subrogee herein in the amount of and to the extent of its payments.

44. As a direct and proximate result of Defendants', MWRD's and CITY's, actions, individually and/or jointly, as alleged above, the Defendants took and/or damaged Owner's property without just compensation.

45. The Metropolitan Water Reclamation District Act, 70 ILCS 70 ILCS 2605/1 provides for the creation of and governs MWRD within the territorial limits of Cook County, Illinois.

46. Section 7h of the Act directs stormwater management in Cook County. Subsection (a) states:

> "Stormwater management in Cook County shall be under the general supervision of the Metropolitan Water Reclamation District of Greater Chicago. The District has the authority to plan, manage, implement, and finance activities relating to stormwater management in Cook County. The authority of the District with respect to stormwater management extends throughout Cook County and is not limited to the area otherwise within the territory and jurisdiction of the District under this Act... 'stormwater management' includes, without limitation, the management of floods and floodwaters."

47. Section 19 of the Act mandates compensation by the MWRD for damages to real estate within the district. Specifically, it provides that:

> "...district shall be liable for all damages to real estate within or without such district which shall be overflowed or otherwise damaged by reason of the construction, enlargement or use of any channel, ditch, drain, outlet or other improvement under the provisions of this act; and actions to recover such damages may be brought in the county where such real estate is situated, or in the county where such sanitary district is located, at the option of the party claiming to be injured. And in case judgment is rendered against such district for damage, the plaintiff shall also recover his reasonable attorneys' fees to be taxed as costs of suit..."

48. At all times relevant, Defendants, individually or jointly, served and continue to serve Cook County, including the areas surrounding the WILLIS TOWER property located at 233 S. Wacker Drive in Chicago, Illinois 60606.

49. At all times relevant, Defendants, individually or jointly, had the authority to design, plan, manage, implement, and finance activities relating to stormwater management in Cook County, including the areas surrounding the WILLIS TOWER property.

50. At all times relevant, Defendants, individually or jointly, maintained, managed, controlled, and regulated several watersheds and waterways in Cook County.

51. At all times relevant, Defendants maintained, managed, controlled, and regulated the Tunnel and Reservoir Plain ("TARP"), several reservoirs and pumping stations in Cook County as part of its stormwater management system.

FILED DATE: 5/14/2021 10:35 AM   2021L004971

FILED DATE: 5/14/2021 10:35 AM 2021L004971

52. At all times relevant, Defendants, individually or jointly, maintained, managed, controlled, and regulated locks, gates, and other water control devices along the Chicago Area Waterway System, including but not limited to the River.

53. At all times relevant, Defendants, individually or jointly, used watersheds, reservoirs, tunnels, pumps, sewers, drains and other stormwater management systems under its control to manage and direct the flow of stormwater before and during forecasted heavy rain events in Cook County, including the areas surrounding the WILLIS TOWER property.

54. On and before May 17, 2020, Defendants, individually or jointly, maintained, managed, controlled, and regulated the stormwater management system in Cook County, including the areas surrounding the WILLIS TOWER property.

55. On and before May 17, 2020, Defendants, individually or jointly, were informed of forecasts for heavy rain and knew or should have known the substantial risk of flooding to the areas surrounding the WILLIS TOWER property in advance of the coming rain event.

56. On and before May 17, 2020, Defendants knew or should have known that the design, construction, maintenance, and operation of the stormwater and combined sewer management system, as alleged above, would result in the flooding of the areas surrounding the WILLIS TOWER property.

57. On information and belief, Defendant City knew or should have known from the use of its plan and/or design of the stormwater and combined sewer management system, as alleged above, that the stormwater and combined sewer management system created a condition that was not reasonably safe.

58. On information and belief, Defendant MWRD knew or should have known from the use of its plan and/or design of the stormwater and combined sewer management system, as alleged

FILED DATE: 5/14/2021 10:35 AM   2021L004971

above, that the stormwater and combined sewer management system created a condition that was not reasonably safe.

59. On information and belief, Defendant City knew or should have known from the use of the stormwater and combined sewer management system, as alleged above, that the stormwater and combined sewer management system created a condition that was not reasonably safe.

60. On information and belief, Defendant MWRD knew or should have known from the use of the stormwater and combined sewer management system, as alleged above, that the stormwater and combined sewer management system created a condition that was not reasonably safe.

61. On information and belief, Defendant City knew or should have known from the use of its plan and/or design of the stormwater and combined sewer management system, as alleged above, that the stormwater and combined sewer management system created a condition that was likely to cause property damage.

62. On information and belief, Defendant MWRD knew or should have known from the use of its plan and/or design of the stormwater and combined sewer management system, as alleged above, that the stormwater and combined sewer management system created a condition that was likely to cause property damage.

63. On information and belief, Defendant City knew or should have known from the use of the stormwater and combined sewer management system, as alleged above, that the stormwater and combined sewer management system created a condition that was likely to cause property damage.

64. On information and belief, Defendant MWRD knew or should have known from the use of the stormwater and combined sewer management system, as alleged above, that the stormwater

11

and combined sewer management system created a condition that was likely to cause property damage.

65. The stormwater and combined sewer management system was designed, constructed, operated, and maintained to cause water to flow in ways that are unnatural.

66. On May 17, 2020, and May 18, 2020, water back flowed through drains and catch basins along Lower Wacker Drive, causing street flooding and inundating the WILLIS TOWER, and these drains and catch basins were part of the stormwater and combined sewer management system.

67. Defendants, individually and jointly, knew from the use of the stormwater and combined sewer management system that the stormwater and combined sewer management system created a condition that was not reasonably safe.

68. Defendants, individually and jointly, knew from the use of the stormwater and combined sewer management system that the stormwater and combined sewer management system caused unnatural water flow that resulted in flooding.

69. Defendants, individually and jointly, knew from the use of the stormwater and combined sewer management system that the stormwater and combined sewer management system had previously caused water to back up through drains on occasions before May 16, 2020.

70. Defendants, individually and jointly, knew from the use of the stormwater and combined sewer management system that when water backed up through drains it caused areas to flood that would not have flooded without the unnatural collection of water by the stormwater and combined sewer management system.

71. Defendants, individually and jointly, knew from the use of the stormwater and combined sewer management system that the system had a history of backing up and causing flooding to areas that would not have flooded absent a deficient system.

FILED DATE: 5/14/2021 10:35 AM    2021L004971

FILED DATE: 5/14/2021 10:35 AM   2021L004971

72. When on May 16, 2020, and May 17, 2020, water back flowed through drains along Lower Wacker Drive that were part of the stormwater and combined sewer management system, this caused flooding that would not have occurred absent a deficient stormwater and combined sewer management system.

73. The Defendants, individually or jointly, could have remedied the defects in the stormwater and combined sewer management system that caused the unnatural flooding in WILLIS TOWER prior to May 17, 2020.

## COUNT I – MWRD VIOLATION OF THE TAKINGS CLAUSE UNDER SECTION 15 OF THE ILLINOIS CONSTITUTION

74. Plaintiffs incorporate by reference paragraphs 1 through 73 as Paragraph 74 of Count I as set forth herein *in haec verba.*

75. Article 1, Section 15 of the Illinois Constitution mandates that "private property shall not be taken or damaged for public use without just compensation as provided by law."

76. On May 17, 2020, Owner suffered a taking of its real and private property without just compensation when stormwater invaded the property located at 233 S. Wacker Drive in Chicago, Illinois 60606 due to failure in the design, maintenance, and/or operation of the stormwater system and combined sewer system, which resulted in the lower levels of the WILLIS TOWER being used as a temporary storage basin for stormwater that would otherwise have been conveyed by the stormwater/combined sewer system to tunnels, reservoirs, or other detention structures had the system been adequately designed, constructed, operated, and maintained.

77. Defendant MWRD knew or should have known that the failure in the design, maintenance, and/or operation of the stormwater system and combined sewer system would result in the lower levels of the WILLIS TOWER becoming a temporary storage basin for stormwater that

FILED DATE: 5/14/2021 10:35 AM   2021L004971

would otherwise have been conveyed by the stormwater/combined sewer system to tunnels, reservoirs, or other detention structures had the system been adequately designed, constructed, operated, and maintained.

78. Defendant's actions constitute a permanent and/or temporary taking of Owner's real and private property for public use without just compensation in violation of Article I, Section 15 of the Illinois Constitution.

79. The flooding into the WILLIS TOWER caused damage to the building, including but not limited to walls, floors, elevators, escalators, electronics, furniture, landscaping, and outdoor structures as well as areas within the building under construction that were destroyed, replaced, or repaired.

80. Defendant did not compensate Owner for the loss, destruction, deprivation, or damage to its property rights.

81. As a direct and proximate result of the above-alleged conduct of the Defendant MWRD on May 17, 2020, certain properties, including the WILLIS TOWER, were inundated with over a million gallons of non-potable water and flooded, causing property damage to real and personal property and other losses of income and expenses for Owner in excess of FOURTEEN MILLION DOLLARS ($14,000,000) to its building and its operations at WILLIS TOWER.

82. As a direct and proximate result of the above-alleged conduct of the Defendant MWRD on May 17, 2020, the WILLIS TOWER incurred damage to real and personal property and other losses of income and expenses for which TRAVELERS has made payments and continues to make payments to and on behalf of its insured, thereby becoming a *bona fide* subrogee herein in the amount of and to the extent of its payments. TRAVELERS is hereby making its claim for the payments made and to be made on account of the Defendant's conduct alleged herein.

FILED DATE: 5/14/2021 10:35 AM  2021L004971

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO, awarding Plaintiff the full and fair amount of just compensation for damages in an amount in excess of FOURTEEN MILLION DOLLARS ($14,000,000), including appropriate interest, compounded, and required by Section Fifteen to the Illinois Constitution or other law, together with court costs, attorney's fees, and such other relief as this Court deems appropriate.

## COUNT II – MWRD VIOLATION OF THE DAMAGES PROVISION OF TAKINGS CLAUSE UNDER SECTION 15 OF THE ILLINOIS CONSTITUTION

83. Plaintiff incorporates by reference paragraphs 1 through 82 above as paragraph 83 of Count II as if set forth herein *in haec verba*.

84. On May 17, 2020, Owner suffered damage to its real and private property without just compensation when stormwater invaded the property located at 233 S. Wacker Drive in Chicago, Illinois 60606 due to failure of the flood mitigation systems, including, but not limited to, the design, maintenance, and/or operation of the stormwater system and combined sewer system, which resulted in the lower levels of the WILLIS TOWER being used as a temporary storage basin for stormwater that would otherwise have been conveyed by the stormwater/combined sewer system to tunnels, reservoirs, or other detention structures had the system been adequately designed, constructed, operated, and maintained.

85. Defendant MWRD knew or should have known that the failure in the design, maintenance, and/or operation of the stormwater system and combined sewer system would result in the lower levels of the WILLIS TOWER becoming a temporary storage basin for stormwater that would otherwise have been conveyed by the stormwater/combined sewer system to tunnels, reservoirs, or other detention structures had the system been adequately designed, constructed, operated, and maintained.

15

FILED DATE: 5/14/2021 10:35 AM 2021L004971

86. Defendant's actions constitute damage to Owner's real and private property for public use without just compensation in violation of Article I, Section 15 of the Illinois Constitution.

87. The flooding into the WILLIS TOWER caused damage to the building, including but not limited to walls, floors, elevators, escalators, electronics, furniture, landscaping, and outdoor structures as well as areas within the building under construction that were destroyed, replaced, or repaired.

88. Defendant did not compensate Owner for the loss, destruction, deprivation, or damage to its property rights.

89. As a direct and proximate result of the above-alleged conduct of the Defendant MWRD, on May 17, 2020, certain properties, including the WILLIS TOWER, were inundated with over a million gallons of non-potable water causing property damage to real and personal property and other losses of income and expenses for Owner, in excess of FOURTEEN MILLION DOLLARS ($14,000,000) to its building and its operations at WILLIS TOWER.

90. As a direct and proximate result of the above-alleged conduct of the Defendant MWRD, on May 17, 2020, the WILLIS TOWER incurred damage to real and personal property and other losses of income and expenses for which TRAVELERS has made payments and continues to make payments to and on behalf of its insured, thereby becoming a *bona fide* subrogee herein in the amount of and to the extent of its payments. TRAVELERS is hereby making its claim for the payments made and to be made on account of the Defendant's conduct alleged herein.

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO, awarding Plaintiff the full and fair amount of just compensation made for damages in an amount in excess of FOURTEEN MILLION DOLLARS ($14,000,000), including appropriate interest,

FILED DATE: 5/14/2021 10:35 AM    2021L004971

compounded, and required by Section Fifteen to the Illinois Constitution or other law, together with Court costs, attorney's fees, and such other relief as this Court deems appropriate.

### COUNT III – MWRD VIOLATION OF THE TAKINGS CLAUSE UNDER SECTION 5 OF THE UNITED STATES CONSTITUTION

91. Plaintiff incorporates by reference paragraphs 1 through 90 above as paragraph 91 of Count III as if set forth herein *in haec verba.*

92. The Fifth Amendment to the United States Constitution mandates just compensation to the property owner when the Government takes private property for public use.

93. On May 17, 2020, the private property of Owner was taken for public use when millions of gallons of non-potable water invaded the property located at the WILLIS TOWER, 233 S. Wacker Drive in Chicago, Illinois 60606, transforming the building into a temporary storage basin for stormwater and sewage from the general public.

94. Beginning on or about May 17, 2020, Owner's private property was taken by Defendant MWRD for public use without just compensation in violation of Section 5 of the United States Constitution.

95. The flooding into the WILLIS TOWER caused damage to the building, including, but not limited to, walls, floors, elevators, escalators, electronics, furniture, landscaping, and outdoor structures that were destroyed, replaced, or repaired.

96. Defendant MWRD did not compensate Owner for the loss, destruction, deprivation, or damage to their property rights.

97. As a direct and proximate result of the taking by the Defendant MWRD on or about May 17, 2020, Owner sustained multi-million dollars of property damage and other losses at the WILLIS TOWER building and losses to its operations.

FILED DATE: 5/14/2021 10:35 AM    2021L004971

98. As a direct and proximate result of the above-alleged conduct of the Defendant MWRD, TRAVELERS made payments and continues to make payments to and on behalf of its insured for the losses occasioned by the Defendant's conduct and has become a *bona fide* subrogee herein in the amount of and to the extent of its payments. TRAVELERS is hereby making its claim for the payments made and to be made on account of the Defendant's conduct alleged herein.

WHEREFORE, Plaintiff prays for judgment in its favor and against the Defendant METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO, awarding Plaintiff the full and fair amount of just compensation for damages in an amount in excess of FOURTEEN MILLION DOLLARS ($14,000,000), including appropriate interest, compounded, as required by the Fifth Amendment to the Constitution of the United States or other law, together with court costs, attorney's fees, and such other relief as this Court deems appropriate.

## COUNT IV – CITY VIOLATION OF THE TAKINGS CLAUSE
## UNDER SECTION 15 OF THE ILLINOIS CONSTITUTION

99. Plaintiff incorporates by reference paragraphs 1 through 98 above as paragraph 99 of Count IV as if set forth herein *in haec verba.*

100.    Article 1, Section 15 mandates that "private property shall not be taken or damaged for public use without just compensation as provided by law."

101.    On May 17, 2020, Owner suffered a taking of its real and private property without just compensation when stormwater invaded the property located at 233 S. Wacker Drive in Chicago, Illinois 60606 due to failure in the design, maintenance, and/or operation of the stormwater system and combined sewer system, which resulted in the lower levels of the WILLIS TOWER being used as a temporary storage basin for stormwater that would otherwise have been conveyed by the stormwater/combined sewer system to tunnels, reservoirs, or other

FILED DATE: 5/14/2021 10:35 AM 2021L004971

detention structures had the system been adequately designed, constructed, operated, and maintained.

102.     CITY knew or should have known that a failure of the flood mitigation systems, including but not limited to the design, maintenance, and/or operation of the stormwater system and combined sewer system, would result in the lower levels of the WILLIS TOWER becoming a temporary storage basin for stormwater that would otherwise have been conveyed by the stormwater/combined sewer system to tunnels, reservoirs, or other detention structures had the system been adequately designed, constructed, operated, and maintained.

103.     Defendant's actions constitute a permanent and/or temporary taking of Owner's real and private property for public use without just compensation in violation of Article I, Section 15 of the Illinois Constitution.

104.     The flooding into the WILLIS TOWER caused damage to the building, including, but not limited to, walls, floors, elevators, escalators, electronics, furniture, landscaping, and outdoor structures as well as areas within the building under construction that were destroyed, replaced, or repaired.

105.     Defendant did not compensate Owner for the loss, destruction, deprivation, or damage to its property rights.

106.     As a direct and proximate result of the above-alleged conduct of the Defendant CITY on May 17, 2020, certain properties, including the WILLIS TOWER, were inundated with over a million gallons of non-potable water causing property damage to real and personal property and other losses of income and expenses to Owner in excess of FOURTEEN MILLION DOLLARS ($14,000,000) to its building and its operations at WILLIS TOWER.

FILED DATE: 5/14/2021 10:35 AM 2021L004971

107.    As a direct and proximate result of the above-alleged conduct of the Defendant CITY, on May 17, 2020, the WILLIS TOWER incurred damage to real and personal property and other losses of income and expenses for which TRAVELERS has made payments and continues to make payments to and on behalf of its insured, thereby becoming a *bona fide* subrogee herein in the amount of and to the extent of its payments. TRAVELERS is hereby making its claim for the payments made and to be made on account of the Defendant's conduct alleged herein.

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant CITY OF CHICAGO, awarding Plaintiff the full and fair amounts of just compensation for damages in an amount in excess of FOURTEEN MILLION DOLLARS ($14,000,000), including appropriate interest, compounded, and required by Section Fifteen to the Illinois Constitution or other law, together with court costs, attorney's fees, and such other relief as this court deems appropriate.

## COUNT V – CITY VIOLATION OF THE DAMAGES PROVISION OF TAKINGS CLAUSE UNDER SECTION 15 OF THE ILLINOIS CONSTITUTION

108.    Plaintiff incorporates by reference paragraphs 1 through 107 above as paragraph 108 of Count V as if set forth herein *in haec verba.*

109.    On May 17, 2020, Owner suffered damage to its real and private property without just compensation when stormwater invaded the property located at 233 S. Wacker Drive in Chicago, Illinois 60606 due to failure in the design, maintenance, and/or operation of the stormwater system and combined sewer system, which resulted in the lower levels of the WILLIS TOWER being used as a temporary storage basin for stormwater that would otherwise have been conveyed by the stormwater/combined sewer system to tunnels, reservoirs, or other detention structures had the system been adequately designed, constructed, operated, and maintained.

110.    CITY knew or should have known that the failure in the design, maintenance, and/or operation of the stormwater system and combined sewer system, would result in the lower levels of the WILLIS TOWER becoming a temporary storage basin for stormwater that would otherwise have been conveyed by the stormwater/combined sewer system to tunnels, reservoirs, or other detention structures had the system been adequately designed, constructed, operated, and maintained.

111.    Defendant's actions constitute damage to Owner's real and private property for public use without just compensation in violation of Article I, Section 15 of the Illinois Constitution.

112.    The flooding into the WILLIS TOWER caused damage to the building, including, but not limited to, walls, floors, elevators, escalators, electronics, furniture, landscaping, and outdoor structures as well as areas within the building under construction that were destroyed, replaced, or repaired.

113.    Defendant did not compensate Owner for the loss, destruction, deprivation, or damage to its property rights.

114.    As a direct and proximate result of the above-alleged conduct of the Defendant CITY on May 17, 2020, certain properties, including the WILLIS TOWER, were inundated with over a million gallons of non-potable water causing property damage to real and personal property and other losses of income and expenses for Owner in excess of FOURTEEN MILLION DOLLARS ($14,000,000) to its building and its operations at WILLIS TOWER.

115.    As a direct and proximate result of the above-alleged conduct of the Defendant CITY, on May 17, 2020, the WILLIS TOWER incurred damage to real and personal property and other losses of income and expenses for which TRAVELERS has made payment and continues to make payment to and on behalf of its insured, thereby becoming a *bona fide* subrogee herein

FILED DATE: 5/14/2021 10:35 AM  2021L004971

21

FILED DATE: 5/14/2021 10:35 AM   2021L004971

in the amount of and to the extent of its payments. TRAVELERS is hereby making its claim for the payments made and to be made on account of the Defendant's conduct alleged herein.

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant CITY OF CHICAGO, awarding Plaintiff the full and fair amount of just compensation for damages in an amount in excess of FOURTEEN MILLION DOLLARS ($14,000,000), including appropriate interest, compounded, and required by Section Fifteen to the Illinois Constitution or other law, together with court costs, attorney's fees, and such other relief as this Court deems appropriate.

## COUNT VI – CITY VIOLATION OF THE TAKINGS CLAUSE UNDER SECTION 5 OF THE UNITED STATES CONSTITUTION

116. Plaintiff incorporates by reference the allegations stated in paragraphs 1 through 115 as paragraph 116 of Count VI as if set forth herein *in haec verba.*

117. The Fifth Amendment to the United States Constitution mandates just compensation to the property owner when the Government takes private property for public use.

118. On May 17, 2020, the private property of Owner was taken for public use when over a million gallons of non-potable water invaded the property located at the WILLIS TOWER, 233 S. Wacker Drive in Chicago, Illinois 60606, transforming the building into a temporary storage basin for stormwater and sewage from the general public.

119. Beginning on or about May 17, 2020, Owner's private property was taken by Defendant CITY for public use without just compensation in violation of Section 5 of the United States Constitution.

120. The flooding into the WILLIS TOWER caused damage to the building, including, but not limited to, walls, floors, elevators, escalators, electronics, furniture, landscaping, and outdoor structures that were destroyed, replaced, or repaired.

FILED DATE: 5/14/2021 10:35 AM   2021L004971

121. Defendant CITY did not compensate Owner for the loss, destruction, deprivation, or damage to its property rights.

122. As a direct and proximate result of the taking by the Defendant CITY on or about May 17, 2020, Owner sustained multi-million dollars of property damage and other losses at the WILLIS TOWER building and its operations.

123. As a direct and proximate result of the above-alleged conduct of the Defendant CITY, TRAVELERS made payments and continues to make payments to and on behalf of its insured for the losses occasioned by the Defendant's conduct and has become a *bona fide* subrogee herein in the amount of and to the extent of its payments. TRAVELERS is hereby making its claim for the payments made and to be made on account of the Defendant's conduct alleged herein.

WHEREFORE, Plaintiff prays for judgment in its favor and against the Defendant CITY OF CHICAGO, awarding Plaintiff the full and fair amount of just compensation for damages in an amount in excess of FOURTEEN MILLION DOLLARS ($14,000,000), including appropriate interest, compounded, as required by the Fifth Amendment to the Constitution of the United States or other law, together with court costs, attorney's fees, and such other relief as this Court deems appropriate.

## COUNT VII – MWRD COMMON LAW NEGLIGENCE

124. Plaintiff re-alleges and incorporates paragraphs 1 through 123 above as paragraph 124 of Count VII as if set forth herein *in haec verba.*

125. At all times mentioned herein, the Defendant MWRD owed a duty to the public and private property owners within the City of Chicago, including Owner, to maintain and operate its stormwater and combined sewer system servicing the City of Chicago and surrounding areas,

23

FILED DATE: 5/14/2021 10:35 AM   2021L004971

including those located at, in, or servicing South Wacker Drive at or near the WILLIS TOWER in a safe and proper fashion so as to prevent flooding within those adjacent properties due to foreseeable rainfall conditions.

126. Defendant MWRD breached the above stated duty by committing one or more of the following acts of omission or commission:

    a. Failed to properly use historical data along with current measurements of the Lake Michigan levels and the levels of the River to determine the need to open all available locks and gates earlier than was actually done on May 17, 2020, in order to manage the flow of stormwater;

    b. Failed to provide a safe and adequate conveyance for stormwater on Lower Wacker Drive;

    c. Failed to provide safe and adequate barriers and/or failed to activate existing barriers to protect Owner's property from millions of gallons of stormwater intrusion via Lower Wacker Drive;

    d. Failed to timely and properly pump down existing stormwater storage basins, sewers and structures in advance of an expected rainfall which would otherwise overwhelm the system;

    e. Failed to provide adequate or sufficient stormwater basins, sewers, and structures to prevent millions of gallons of non-potable water from flooding South Lower Wacker Drive;

    f. Failed to perform pre-rainfall operations by pumping out and pumping down existing stormwater storage and/or conveyances sufficiently in advance of an expected heavy rainfall on May 17th;

    g. Failed to perform pre-rainfall operations by pre-staging installation of property protection systems to protect Lower Wacker Drive and other areas from flooding based upon expected heavy rainfall on May 17th, given the known Lake Michigan and River water levels;

    h. Failed to properly maintain the locks and gates system so that they would fully and properly function to reduce the water level in the area of the Plaintiff's property when engaged and opened;

    i. Failed to follow its own procedures to prepare for the rain predicted on May 16, 2020;

FILED DATE: 5/14/2021 10:35 AM   2021L004971

j.  Executed actions to prepare for the predicted rain on May 16, 2020, but failed to execute these actions in a safe or reasonable manner, including, but not limited to, failed to lower the water measured at the Chicago River Lock & Controlling Works to the level required in their own Systems Dispatcher manual;

k.  Executed actions to address the rain and water on May 16 and 17, 2020, but failed to execute these actions in a safe or reasonable manner;

l.  Lowered the level of the River in preparation for the rain predicted to fall on May 16, 2020, but failed to lower it to -3.00 CCD;

m.  Knew or should have known the water measured at the elevation gauge at the Chicago River Lock & Controlling Works exceeded the maximum allowable height under federal law multiple times a year but failed to address this situation in the manner prescribed in its own procedures;

n.  Knew or should have known the water measured at the elevation gauge at the Chicago River Lock & Controlling Works exceeded the maximum allowable height under its own policies and procedures multiple times a year but failed to address this situation in the manner prescribed in its own procedures;

o.  Knew or should have known from the history of the water measured at the elevation gauge at the Chicago River Lock & Controlling Works exceeding the maximum allowable height under its own policies and procedures multiple times a year that the condition of the stormwater and combined sewer management system created a condition that was likely to cause property damage;

p.  Knew or should have known from the history of water measured at the elevation gauge at the Chicago River Lock & Controlling Works exceeding the maximum allowable height under its own policies and procedures multiple times a year that the condition of the stormwater and combined sewer management system created a condition that was not reasonably safe;

q.  Created an unnatural flow of water through its stormwater and combined sewer management system that caused unnatural flooding to the WILLIS TOWER; and

r.  Knew from the history of the use of the stormwater and combined sewer management system that the stormwater and combined sewer management system caused unnatural flooding but failed to remedy this situation despite having the ability to remedy the situation.

127.  As a direct and proximate result of the negligent conduct of the Defendant MWRD on and

before May 17, 2020, certain properties in the South Wacker Drive area, including the WILLIS

TOWER, were inundated with over a million gallons of non-potable water causing damage to

FILED DATE: 5/14/2021 10:35 AM 2021L004971

real and personal property and other losses of income and expenses to Owner at the WILLIS TOWER building and to its operations.

128.     As a direct and proximate result of the above-alleged conduct of the Defendant MWRD on and before May 17, 2020, certain properties in the South Wacker Drive area, including the WILLIS TOWER, were inundated with over a million gallons of non-potable water causing damage to real and personal property and other losses of income and expenses for which TRAVELERS has made payments and continues to make payments to and on behalf of its insured for property damage and other losses occasioned by the Defendant's conduct thereby becoming a *bona fide* subrogee herein to the extent of its payments. TRAVELERS is hereby making its claim for the payments made and to be made on account of the Defendant's conduct alleged herein.

WHEREFORE, Plaintiff prays for judgment in its favor and against the Defendant METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO, awarding Plaintiff an amount in excess of FOURTEEN MILLION DOLLARS ($14,000,000), together with court costs, and such other relief as this Court deems appropriate.

## COUNT VIII – CITY COMMON LAW NEGLIGENCE

129.     Plaintiff re-alleges and incorporates paragraphs 1 through 128 above as paragraph 129 of Count VIII as if set forth herein *in haec verba*.

130.     At all times mentioned herein, the Defendant CITY owed a duty to the public and private property owners within the City of Chicago, including Owner, to maintain and operate its stormwater and combined sewer system servicing the City of Chicago and surrounding areas, including those located at, in, or servicing South Wacker Drive at or near the WILLIS TOWER

26

in a safe and proper fashion so as to prevent flooding within those adjacent properties due to foreseeable rainfall conditions.

131.    Defendant CITY breached the above stated duty, by committing one or more of the following acts of omission or commission:

     a.  Failed to properly use historical data along with current measurements of the Lake Michigan levels and the levels of the River to determine the need to open all available locks and gates earlier than was actually done on May 17, 2020, in order to manage the flow of stormwater;

     b.  Failed to provide a safe and adequate conveyance for stormwater on Lower Wacker Drive;

     c.  Failed to provide safe and adequate barriers and/or failed to activate existing barriers to protect Owner's property from millions of gallons of stormwater intrusion via Lower Wacker Drive;

     d.  Failed to timely and properly pump down existing stormwater storage basins, sewers and structures in advance of an expected rainfall which would otherwise overwhelm the system;

     e.  Failed to provide adequate or sufficient stormwater basins, sewers, and structures to prevent millions of gallons of non-potable water from flooding South Lower Wacker Drive;

     f.  Failed to perform pre-rainfall operations by pumping out and pumping down existing stormwater storage and/or conveyances sufficiently in advance of an expected heavy rainfall on May 17th;

     g.  Failed to perform pre-rainfall operations by pre-staging installation of property protection systems to protect Lower Wacker Drive and other areas from flooding based upon expected heavy rainfall on May 17th, given the known Lake Michigan and River water levels; and

     h.  Failed to properly maintain the locks and gates system so that they would fully and properly function to reduce the water level in the area of the Plaintiff's property when engaged and opened.

132.    As a direct and proximate result of the negligent conduct of the Defendant CITY on and before May 17, 2020, certain properties in the South Wacker Drive area, including the WILLIS TOWER, were inundated with over a million gallons of non-potable water causing damage to

FILED DATE: 5/14/2021 10:35 AM   2021L004971

FILED DATE: 5/14/2021 10:35 AM   2021L004971

real and personal property and other losses of income and expenses for Owner at the WILLIS TOWER building and to its operations.

133.   As a direct and proximate result of the above-alleged conduct of the Defendant CITY on and before May 17, 2020, certain properties in the South Wacker Drive area, including the WILLIS TOWER, were inundated with over a million gallons of non-potable water causing damage to real and personal property and other losses of income and expenses for which TRAVELERS has made payments and continues to make payments to and on behalf of its insured for property damage and other losses occasioned by the Defendant's conduct thereby becoming a *bona fide* subrogee herein to the extent of its payments. TRAVELERS is hereby making its claim for the payments made and to be made on account of the Defendant's conduct alleged herein.

WHEREFORE, Plaintiff prays for judgment in its favor and against the Defendant CITY OF CHICAGO, awarding Plaintiff an amount in excess of FOURTEEN MILLION DOLLARS ($14,000,000), together with court costs, and such other relief as this court deems appropriate.

## COUNT IX – MWRD BREACH OF STATUTORY DUTY

134.   Plaintiff re-alleges paragraphs 1 through 133 as paragraph 134 of Count IX as if set forth herein *in haec verba*.

135.   Prior to May 17, 2020, Defendant MWRD constructed a stormwater and combined sewer system.

136.   The stormwater system and/or combined sewer system was and is property within the meaning of 745 ILCS Section 10/3-102.

137.   Defendant MWRD was under a duty to safely and properly maintain and operate its sewer and stormwater systems, under 745 ILCS Section 10/3-102 which states in pertinent part:

FILED DATE: 5/14/2021 10:35 AM   2021L004971

Sec. 3-102 (1) Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used.

138.   Defendant MWRD owed the foregoing duties to Owner because its property was serviced by the stormwater and combined sewer system. Based upon prior water invasions in the general area, MWRD knew that property owners, including Owner, would be foreseeably injured by breaches of these statutory duties because invading stormwater from the MWRD stormwater and combined sewer system into Owner's building posed a known risk to the Owner's property.

139.   On information and belief, MWRD had actual or constructive notice of the existence of defects to the stormwater and combined sewer system based upon prior stormwater invasions, any prior investigations of stormwater invasions, any prior studies of this Defendant's stormwater improvement system(s), and/or the Reclamation District's Detailed Watershed Plans.

140.   The likelihood and magnitude of the potential danger of its failure to properly manage, maintain, and operate the stormwater and combined sewer system and the flooding of adjacent properties was foreseeable and greatly outweighed the practicability and cost of proper management of its systems.

141.   Notwithstanding this statutory duty and constructive notice of the consequences of failing to perform its statutory duty, MWRD negligently breached this general duty to properly maintain the stormwater and combined sewer system by the following conduct:

a.   This Defendant failed to provide safe, adequate mitigation systems to prevent water invasions by utilizing and providing properly designed protection systems;

b.   Failed to properly maintain the locks and gates system so that they would fully and properly function to reduce River levels below flood stages so as to protect the area of Owner's property;

FILED DATE: 5/14/2021 10:35 AM   2021L004971

c.   Failed to maintain and/or provide back flow devices within the overall system;

d.   Failed to maintain pumps within the overall system;

e.   Failed to maintain the individual gates within the system;

f.   Failed to install and/or engage property protection devices during the storm event; and

g.   Such other conduct as shall be revealed during the course of discovery.

142.   As a direct and proximate result of the negligent conduct of the Defendant MWRD on May 17, 2020, certain properties in the South Wacker Drive area, including the WILLIS TOWER, were inundated with over a million gallons of non-potable water causing property damage to real and personal property and other losses of income and expenses to Owner at the WILLIS TOWER building and its operations.

143.   As a direct and proximate result of the above-alleged conduct of the Defendant MWRD, on May 17, 2020, certain properties in the South Wacker Drive area, including the WILLIS TOWER, were inundated with over a million gallons of water causing damage to real and personal property and other losses of income and expenses for which TRAVELERS has made payments and continues to make payments to and on behalf of its insured, thereby becoming a *bona fide* subrogee herein to the extent of its payments. TRAVELERS is hereby making its claim for the payments made and to be made on account of the Defendant's conduct alleged herein.

WHEREFORE, Plaintiff prays for judgment in its favor and against the Defendant METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO, awarding Plaintiff an amount in excess of FOURTEEN MILLION DOLLARS ($14,000,000), together with court costs, and such other relief as this Court deems appropriate.

FILED DATE: 5/14/2021 10:35 AM    2021L004971

## COUNT X – CITY BREACH OF STATUTORY DUTY

144.    Plaintiff re-alleges paragraphs 1 through 143 as paragraph 144 of Count X as if set forth herein *in haec verba*.

145.    Prior to May 17, 2020, Defendant CITY constructed a stormwater and combined sewer system.

146.    The storm water system and/or combined sewer system was and is property within the meaning of 745 ILCS Section 10/3-102.

147.    Defendant CITY was under a duty to safely and properly maintain and operate its sewer and stormwater systems, under 745 ILCS Section 10/3-102 which states in pertinent part:

Sec. 3-102 (1) Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used.

148.    Defendant CITY owed the foregoing duties to Owner as one of the property owners serviced by the stormwater and combined sewer system. Based upon prior water invasions in the general area, CITY knew that property owners, including Owner, would be foreseeably injured by breaches of these statutory duties because invading stormwater from the CITY stormwater and combined sewer system into Owner's building posed a known risk to Owner's property.

149.    On information and belief, CITY had actual or constructive notice of the existence of defects to the stormwater and combined sewer system based upon prior stormwater invasions, any prior investigations of stormwater invasions, any prior studies of this Defendant's

31

FILED DATE: 5/14/2021 10:35 AM 2021L004971

stormwater improvement system(s), and/or the Reclamation District's Detailed Watershed Plans.

150. The likelihood and magnitude of the potential danger of its failure to properly manage, maintain, and operate the stormwater and combined sewer system and the flooding of adjacent properties was foreseeable and greatly outweighed the practicability and cost of proper management of its systems.

151. Notwithstanding this statutory duty and constructive notice of the consequences of failing to perform its statutory duty, CITY negligently breached this general duty to properly maintain the stormwater and combined sewer system by the following conduct:

    a. This Defendant failed to provide safe, adequate mitigation systems to prevent water invasions by utilizing and providing properly designed protection systems;

    b. Failed to properly maintain the locks and gates system so that they would fully and properly function to reduce River water levels so as to protect the area of Owner's property;

    c. Failed to maintain and/or provide back flow devices within the overall system;

    d. Failed to maintain pumps within the overall system;

    e. Failed to maintain the individual gates within the system;

    f. Failed to install and/or engage property protection devices during the storm event; and

    g. Such other conduct as shall be revealed during the course of discovery.

152. As a direct and proximate result of the negligent conduct of the Defendant CITY, on May 17, 2020, certain properties in the South Wacker Drive area, including the WILLIS TOWER, were inundated with over a million gallons of non-potable water causing damage to real and

FILED DATE: 5/14/2021 10:35 AM   2021L004971

personal property and other losses of income and expenses to Owner at the WILLIS TOWER building and its operations.

153.   As a direct and proximate result of the above-alleged conduct of the Defendant CITY on May 17, 2020, certain properties in the South Wacker Drive area, including the WILLIS TOWER, were inundated with over a million gallons of non-potable water causing damage to real and personal property and other losses of income and expenses for which TRAVELERS has made payments and continues to make payments to and on behalf of its insured, thereby becoming a *bona fide* subrogee herein to the extent of its payments. TRAVELERS is hereby making its claim for the payments made and to be made on account of the Defendant's conduct alleged herein.

WHEREFORE, Plaintiff prays for judgment in their favor and against the Defendant CITY OF CHICAGO, awarding Plaintiff an amount in excess of FOURTEEN MILLION DOLLARS ($14,000,000), together with court costs, and such other relief as this court deems appropriate.

## COUNT XI – MWRD NEGLIGENT FAILURE TO REMEDY KNOWN DANGEROUS CONDITION

154.   Plaintiff re-alleges paragraphs 1 through 153 as paragraph 154 of Count XI as if set forth herein *in haec verba.*

155.   MWRD'S stormwater system and combined sewer system was "property" within the meaning of 745 ILCS §10/3-102(a).

156.   The stormwater system and combined sewer system owned and maintained by MWRD was and is "property" within the meaning of 745 ILCS§ 10/3-103(a).

157.   Prior to the May 17, 2020, flood event described previously in this complaint, Defendant MWRD had constructed a stormwater system and combined sewer system.

33

FILED DATE: 5/14/2021 10:35 AM 2021L004971

158.    MWRD knew that its existing stormwater system and combined sewer system created unreasonably dangerous conditions to Owner as stormwater invasions had previously resulted in the area serviced by this Defendant's system from the operation of that system.

159.    MWRD was under a duty to remedy any unsafe condition arising after the execution of its construction plan relating to stormwater retention and/or improvement of its sewer system(s) and/or sanitary water sewer system(s), which had resulted in storm water invasions into Owner's building at the WILLIS TOWER as well as other properties in the general area of South Wacker Drive under 745 ILCS Sec. 3-103(a), which states in relevant part:

> Sec. 3-103. (a) A local public entity is not liable under this Article for an injury caused by the adoption of a plan or design of a construction of, or an improvement to public property where the plan or design has been approved in advance of the construction or improvement by the legislative body of such entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved. The local public entity is liable, however, if after the execution of such plan or design it appears from its use that it has created a condition that it is not reasonably safe.

160.    On information and belief, Defendant knew of defects causing stormwater invasions and this Defendant failed to remedy these known defects.

161.    This Defendant owed Owner, whose property was serviced by MWRD stormwater system and combined sewer system, a duty as it was reasonably foreseeable Owner would be injured by breach of these statutory duties because stormwater from the system had previously intruded and flooded into properties in the area of the WILLIS TOWER and therefore posed a known risk to the safety and welfare of Owner's property.

162.    MWRD owed this duty under §3-103(a) as to all structures within its system owned, operated, and/or controlled by MWRD.

FILED DATE: 5/14/2021 10:35 AM 2021L004971

163.   MWRD breached this duty to properly maintain the stormwater retention and improvement

sewer systems and/or sanitary water sewer facilities by the following conduct:

   a.   This Defendant failed to provide safe, adequate mitigation systems to prevent water invasions by utilizing and providing properly designed protection systems;

   b.   Failed to properly maintain the locks and gates system so that they would fully and properly function to reduce River water levels below so as to protect the area of Owner's property;

   c.   Failed to maintain and/or install back flow devices within the overall system;

   d.   Failed to maintain pumps within the overall system;

   e.   Failed to maintain individual gates within the system;

   f.   Failed to install and/or engage property protection devices during the storm event; and

   g.   Such other conduct as shall be revealed during the course of discovery.

164.   As a direct and proximate result of the negligent conduct of the Defendant MWRD, on May 17, 2020, certain properties in the South Wacker Drive area, including the WILLIS TOWER, were inundated with over a million gallons of non-potable water causing damage to real and personal property and other losses of income and expenses to Owner at the WILLIS TOWER building and its operations.

165.   As a direct and proximate result of the above-alleged conduct of the Defendant MWRD on May 17, 2020, certain properties in the South Wacker Drive area, including the WILLIS TOWER, were inundated with over a million gallons of non-potable water causing damage to real and personal property and other losses of income and expenses for which TRAVELERS has made payments and continues to make payments to and on behalf of its insured, thereby becoming a *bona fide* subrogee herein to the extent of its payments. TRAVELERS is hereby

35

FILED DATE: 5/14/2021 10:35 AM   2021L004971

making its claim for the payments made and to be made on account of the Defendant's conduct alleged herein.

WHEREFORE, Plaintiff prays for judgment in its favor and against the Defendant METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO, awarding Plaintiff an amount in excess of FOURTEEN MILLION DOLLARS ($14,000,000), together with court costs, and such other relief as this court deems appropriate.

## COUNT XII-CITY NEGLIGENT FAILURE
## TO REMEDY KNOWN DANGEROUS CONDITION

166.   Plaintiff re-alleges paragraphs 1 through 165 as paragraph 166 of Count XII as if set forth herein *in haec verba*.

167.   CITY'S stormwater system and combined sewer system was "property" within the meaning of 745 ILCS §10/3-102(a).

168.   The stormwater system and combined sewer system owned and maintained by CITY was and is "property" within the meaning of 745 ILCS §10/3-103(a).

169.    Prior to the May 17, 2020, flood event described previously in this complaint, Defendant CITY had constructed a stormwater system and combined sewer system.

170.   CITY knew that its existing stormwater system and combined sewer system created an unreasonably dangerous condition to Owner as stormwater invasions had previously resulted in the area serviced by this Defendant's system from the operation of that system.

171.   CITY was under a duty to remedy any unsafe condition arising after the execution of its construction plan relating to stormwater retention and/or improvement of its sewer system(s) and/or sanitary water sewer system(s), which had resulted in storm water invasions into Owner's building at the WILLIS TOWER as well as other properties in the general area of South Wacker Drive under 745 ILCS Sec. 3-103(a), which states in relevant part:

FILED DATE: 5/14/2021 10:35 AM   2021L004971

Sec. 3-103. (a) A local public entity is not liable under this Article for an injury caused by the adoption of a plan or design of a construction of, or an improvement to public property where the plan or design has been approved in advance of the construction or improvement by the legislative body of such entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved. The local public entity is liable, however, if after the execution of such plan or design it appears from its use that it has created a condition that it is not reasonably safe.

172.   On information and belief, Defendant knew of defects causing stormwater invasions and this Defendant failed to remedy these known defects.

173.   This Defendant owed Owner, whose property was serviced by CITY stormwater system and combined sewer system, a duty as it was reasonably foreseeable the Owner would be injured by breach of these statutory duties because stormwater from the system had previously intruded and flooded into properties in the area of the WILLIS TOWER and therefore posed a known risk to the safety and welfare of Owner's property.

174.   CITY owed this duty under §3-103(a) as to all structures within its system owned, operated and/or controlled by CITY.

175.   CITY breached this duty to properly maintain the stormwater retention and improvement sewer systems and/or sanitary water sewer facilities by the following conduct:

    a.   This Defendant failed to provide safe, adequate mitigation systems to prevent water invasions by utilizing and providing properly designed protection systems;

    b.   Failed to properly maintain the locks and gates system so that they would fully and properly function to reduce River water levels so as to protect the area of Owner's property;

    c.   Failed to maintain and/or install back flow devices within the overall system;

    d.   Failed to maintain pumps within the overall system;

    e.   Failed to maintain individual gates within the system;

FILED DATE: 5/14/2021 10:35 AM   2021L004971

    f.  Failed to install and/or engage property protection devices during the storm event; and

    g.  Such other conduct as shall be revealed during the course of discovery.

176.    As a direct and proximate result of the negligent conduct of the Defendant CITY, on May 17, 2020, certain properties in the South Wacker Drive area, including the WILLIS TOWER, were inundated with over a million gallons of non-potable water causing damage to real and personal property and other losses of income and expenses to Owner at the WILLIS TOWER building and its operations.

177.    As a direct and proximate result of the above-alleged conduct of the Defendant CITY on May 17, 2020, certain properties in the South Wacker Drive area, including the WILLIS TOWER, were inundated with over a million gallons of non-potable water causing damage to real and personal property and other losses of income and expenses for which TRAVELERS has made payments and continues to make payments to and on behalf of its insured, thereby becoming a *bona fide* subrogee herein to the extent of its payments. TRAVELERS is hereby making its claim for the payments made and to be made on account of the Defendant's conduct alleged herein.

WHEREFORE, Plaintiff, prays for judgment in its favor and against the Defendant CITY OF CHICAGO, awarding Plaintiff an amount in excess of FOURTEEN MILLION DOLLARS ($14,000,000), together with court costs, and such other relief as this court deems appropriate.

Respectfully submitted,

By:   /s/ Steven R. Johnson

Attorneys for Plaintiff

FILED DATE: 5/14/2021 10:35 AM   2021L004971

MAISEL & ASSOCIATES
**Mailing Address:**
P.O. Box 64093
St. Paul, MN  55164-0093
312-458-6500
Fax: 855-821-7317
E-Mail: RPMLaw1@Travelers.com

Steven R. Johnson
Bart R. Zimmer
LANGHENRY, GILLEN, LUNDQUIST & JOHNSON, LLC
33 N. DEARBORN STREET – SUITE 1600
Chicago, Illinois 60602
(630) 653-5775
Email: sjohnson@lglfirm.com

FILED DATE: 5/14/2021 10:35 AM   2021L004971

**From:**       Elenteny, Matthew <ElentenyM@mwrd.org>
**Sent:**       Sunday, May 17, 2020 1:39 AM
**To:**         Cummings, Joseph; Perkovich, Brian; Murray, John (Dir of M&O); Peslak, Richard; Staudacher, Ed; Whitehead, Steven; McGregor, Matthew
**Cc:**         White, William; Rohe,Tracy; Rijal, Dev; Donnelly, Paul; Flintroy, Paula
**Subject:**    RAPS i/s to river

RAPS i/s to river at 12:35 AM

**EXHIBIT**

A

MWRD_2020_09_02-000385

FILED DATE: 5/14/2021 10:35 AM   2021L004971

| | |
|---|---|
| **From:** | Ko, Ann <KoA@mwrd.org> |
| **Sent:** | Friday, May 22, 2020 10:28 AM |
| **To:** | Levy, Brian |
| **Subject:** | Re: Lake Michigan Reversal on Sunday, May 17, 2020 and Monday, May 18, 2020 |

thank you.

**From:** Levy, Brian <LevyB@mwrd.org>
**Sent:** Friday, May 22, 2020 9:16 AM
**To:** Ko, Ann <KoA@mwrd.org>
**Cc:** Kaunelis, Brian <KaunelisB@mwrd.org>; Robertson, Cedric <RobertsonC@mwrd.org>; Parnell, Steven <ParnellS@mwrd.org>
**Subject:** Lake Michigan Reversal on Sunday, May 17, 2020 and Monday, May 18, 2020

Hi Ann,

A Lake Michigan reversal occurred at the Wilmette Pumping Station from Sunday, May 17, 2020 at 3:45 PM to Monday, May 18, 2020 at 8:15 PM. The total amount of the volume discharged into Lake Michigan at this location was 848.1 million gallons. The minimum and maximum elevations at the North Shore Channel were +0.30 FT CCD and +6.99 FT CCD, respectively.

In addition, a Lake Michigan reversal occurred at the Chicago River Controlling Works from Sunday, May 17, 2020 at 7:30 PM to Monday, May 18, 2020 at 10:10 AM. The total amount of the volume discharged into Lake Michigan at this location was 1,731.6 million gallons. The minimum and maximum elevations at the Chicago River were -2.96 FT CCD and +4.35 FT CCD, respectively.

Please use this information for your letter to the IEPA and to update the link to the "Summary of Lake Michigan Reversals" on the District's Combined Sewer Overflow page.

Please let me know if you need any further information.

Brian

FILED DATE: 5/14/2021 10:35 AM   2021L004971

**From:** White, William <WhiteW@mwrd.org>
**Sent:** Monday, May 18, 2020 6:41 AM
**To:** McGregor, Matthew
**Cc:** Rohe,Tracy; Elenteny, Matthew; Flintroy, Paula; Donnelly, Paul; Rijal, Dev
**Subject:** RE: Plant Status

**Importance:** High

Matt:

Here's a general storm synopsis / plant status:

**Rain:**
Stickney rain gauge at Midnight on 5/17/20: 4.01"
Stickney rain gauge after Midnight until 5:30 AM on 5/18/20: 0.05"

**RAPS:**
12 pumps in the river at RAPS
RAPS coarse screens o/s due to hydraulic lines pinched (flow thru)
RAPS pulling from Stickney with one gate open (#8) @ 100%

**Stickney:**
Plant at max flow: 1210 MGD
D799 took on water in the basement – emergency trades were called out to pump it down (Jankun & P2's onsite overnight)
WS Elevation chart to Tiger Panel o/s – reading is accurate locally per ACOE and can be viewed on DCS WS Pump page
Treatment at Stickney is good.

**TARP & CAWS:**
TARP is filled to capacity & the MTS gates were closed for this storm (filled & closed during previous storm)
DP is displacing water at MSPS @ +35.4'
MS is in positive territory @ +5.5'
McCook is isolated @ - 39'
Multiple CSO's throughout the TARP system have been reported to the quick notification website, including NBPS, RAPS, and WCPS.

Lake reversals occurred at both Wilmette & CRCW during this event per the Systems Dispatcher.

**Citizen Calls:**
Multiple citizen calls to the control room on 3-11 shift for basement flooding (most from Cicero area per 3-11 log)
Brookfield Zoo building engineer called to inquire when DP system / sewers may recede – advised that our facilities are at max flow.

Bill

**From:** McGregor, Matthew <McGregorM@mwrd.org>
**Sent:** Sunday, May 17, 2020 8:55 PM
**To:** White, William <WhiteW@mwrd.org>
**Subject:** Fw: Plant Status

Bill - Thanks for coming in to cover Paula's absence tonight. Before the end of MID shift, please send me a plant status with the information requested below.

**From:** Conway, Thomas <ConwayT2@mwrd.org>
**Sent:** Sunday, May 17, 2020 7:40 PM
**To:** Cummings, Joseph <CummingsJ@mwrd.org>; McGregor, Matthew <McGregorM@mwrd.org>
**Subject:** Fwd: Plant Status

Get Outlook for iOS

**From:** Murray, John (Dir of M&O) <MurrayJ2@mwrd.org>
**Sent:** Sunday, May 17, 2020 7:40:05 PM
**To:** Staudacher, Ed <StaudacherE@mwrd.org>; Serafino, Sergio <SerafinoS@mwrd.org>; Dorigan, Neil <DoriganN@mwrd.org>; Conway, Thomas <ConwayT2@mwrd.org>; Gronski, Adam <GronskiA@mwrd.org>; Shah, Hiteshkumar <ShahH@mwrd.org>; Lai, Katarzyna <LaiK@mwrd.org>; Patel, Sanjay <PatelS@mwrd.org>
**Cc:** Robertson, Cedric <RobertsonC@mwrd.org>
**Subject:** Re: Plant Status

Send status by 7:30 AM to Cedric.. If there are not significant issues at your respective facility simply state such. Provide rainfall data for your location, Calumet and Kirie TARP status, if there's EHLO, treatment issues, etc.

Cedric, send the report to me by 9:00 AM

Thanks.
Get Outlook for iOS

**From:** Staudacher, Ed <StaudacherE@mwrd.org>
**Sent:** Sunday, May 17, 2020 5:48 PM
**To:** Serafino, Sergio; Dorigan, Neil; Conway, Thomas; Gronski, Adam; Shah, Hiteshkumar; Lai, Katarzyna; Patel, Sanjay
**Cc:** Murray, John (Dir of M&O); Robertson, Cedric
**Subject:** Plant Status

Please send a summary of plant status to Cedric to prepare a BOC storm report.

Get Outlook for iOS

FILED DATE: 5/14/2021 10:35 AM 2021L004971

**From:** Robertson, Cedric <RobertsonC@mwrd.org>
**Sent:** Thursday, May 21, 2020 5:01 PM
**To:** Levy, Brian
**Cc:** Staudacher, Ed; Parnell, Steven
**Subject:** Re: Reversal Volume on 5/17/2020 and 5/18/2020 Storm No. 13

Sir,

Approved. I also saw that the Lake was higher than the River for roughly 1 hour and 40 mins. while the CRCW gates were open, therefore, a reversal couldn't occur during that period of time (10:05 am to 11:45 am on 5/18/2020).

Thanks,

Cedric.

**From:** Levy, Brian <LevyB@mwrd.org>
**Sent:** Thursday, May 21, 2020 3:07 PM
**To:** Robertson, Cedric <RobertsonC@mwrd.org>
**Cc:** Staudacher, Ed <StaudacherE@mwrd.org>; Parnell, Steven <ParnellS@mwrd.org>
**Subject:** Reversal Volume on 5/17/2020 and 5/18/2020 Storm No. 13

Hi Cedric,

For your review, attached is the volume calculation for the reversal on Sunday, 5/17/2020 and Monday, 5/18/2020.

The following are the reversal start/stop times and totals.

- The reversal started at WPS at 3:45 PM on 5/17/2020 and ended at 8:15 PM on 5/18/2020.
- The reversal started at CRCW at 7:30 PM on 5/17/2020 and ended at 10:10 AM on 5/18/2020.
- The volume reversed at WPS was 848.1 MG.
- The volume reversed at CRCW for both the lock and the gates was 1,731.6 MG.
- Total volume reversed was 2,579.7 MG.

Please note the following:

- The elevation at WPS maxed out at 6.99 FT CCD from 8:20 PM 5/17 to 9:35 PM 5/17. It was observed by staff that the water was overflowing up to the station. However, we don't know the exact peak elevation and the time that it peaked. I am going to assumed a maximum elevation of 6.99 FT CCD.
- The elevations at CRCW flatlined at about 4.35 FT CCD from 7:45 PM 5/17 to 11:35 PM. USGS has data; however, their data also seems glitchy during this time period as well. I am going to assume a maximum elevation of 4.35 FT CCD.

The files are located here: \\falcon\M&O\Waterways\Reversals Backflows & Super Storms\2020\Reversal Calculations 0517and182020

If you approve, I will forward the reversal data to Tech Projects and update our reversal records.

Brian

FILED DATE: 5/14/2021 10:35 AM  2021L004971

FILED DATE: 5/14/2021 10:35 AM   2021L004971

**From:** White, William <WhiteW@mwrd.org>
**Sent:** Saturday, May 16, 2020 7:30 PM
**To:** McGregor, Matthew
**Cc:** Whitehead, Steven; Flintroy, Paula; Elenteny, Matthew; Rijal, Dev; Rohe,Tracy; Donnelly, Paul
**Subject:** Sewe‑ Control Mobilized:

MM:

I talked to Steve Whitehead regarding the possible need for diverters / sandbags should the DP displace water in tonight's forecast rain event.

He's been given approval to mobilize a crew and hit his priority area(s).

Bill

6:05 PM - S. Whitehead contacted regarding large rain event in forecast.  He will consult with his chain of command if there is any necessity to place diverters, etc. in Riverside should DP tunnel displace water.  MM updated.
6:25 PM - S. Whitehead calls back to CCR – reports that E. Staudacher has approved mobilization of a crew to do some sandbag / diverter work at priority areas.  MM updated.

Metropolitan Water Reclamation District *of* Greater Chicago

# Press Release

Allison Fore
Public and Intergovernmental Affairs Officer
312.751.6626
[email protected]
100 East Erie Street, Chicago, Illinois 60611

For immediate release
May 18, 2020

## 8:30 a.m. MWRD Storm update

Over the last 96 hours, the Chicago metropolitan area has seen between 6 to 8 inches of rainfall. The levels of rainfall varied across the region with more falling in the northern suburbs and less in the south suburbs. From May 14 to May 17, the National Weather Service reports that 7.88 inches of rain fell at O'Hare and 6.22 inches of rain fell at Midway with higher localized totals across the area. For the entire month of May 2020, 8.19 inches of rain has fallen.

To mitigate the impact of the storm event, we have reversed the flow of the Chicago Area Waterway system to Lake Michigan at the Wilmette Pumping Station and at the Chicago River Controlling Works downtown to minimize overbank flooding. There are several factors we consider when determining to release floodwater to the lake, including the rate the river water level is rising at each lakefront control location, whether the rainfall intensity is continuing or beginning to decrease, and the storm conditions on the radar.

Reversal incidents at each location includes:

- Wilmette Pumping Station reversed from May 15, 2020 at 2:30 a.m. to May 15, 2020 at 5:45 a.m.
- Wilmette Pumping Station started reversing May 17, 2020 at 3:45 p.m. and is still ongoing.
- Chicago River Controlling Works, downtown Chicago, started reversing on May 17, 2020 at 7:20 p.m. and is still ongoing.

The Tunnel and Reservoir Plan is comprised of three systems and all are operating as designed. Combined they are currently holding more than 8 billion gallons. The current status of all TARP tunnels and reservoirs includes:

- McCook TARP System: 100% full, 4.970 billion gallons stored; Comprised of Mainstream Tunnel, Des Plaines Tunnel, and McCook Reservoir
- Calumet TARP System: 36% full, 3.017 billion gallons stored; comprised of Calumet Tunnel and Thornton Composite Reservoir
- Kirie TARP System: Tunnel - 100% full, 71 million gallons stored & Majewski CUP - 243 million gallons stored

Currently the North Shore Channel and the Chicago River are higher than the lake. In order for the MWRD to reverse the flow of the Chicago Area Waterways, the river must be higher than the lake.

The U.S. Army Corps of Engineers provides data on the lake level. This can be found at https://www.lre.usace.army.mil/Missions/Great-Lakes-Information/Great-Lakes-Water-Levels/Water-Level-Forecast/Monthly-Bulletin-of-Great-Lakes-Water-Levels/.

Recovering Resources, Transforming Water

*Established in 1889, the MWRD (www.mwrd.org) is an award-winning, special purpose government agency responsible for wastewater treatment and stormwater management in Cook County, Illinois.*

FILED DATE: 5/14/2021 10:35 AM  2021L004971

FILED DATE: 5/14/2021 10:36 AM 2021.004971

## Staudacher, Ed

| | |
|---|---|
| **From:** | MWRD Disptach <mail@notify.onecallnow.com> |
| **Sent:** | Friday, May 15, 2020 6:27 AM |
| **To:** | Staudacher, Ed |
| **Subject:** | Lake Michigan Reversal Notification |

### Notification from: **Metropolitan Water Reclamation District of Greater Chicago**

The MWRD stopped reversing the flow of the Chicago Area Waterways to Lake Michigan at the Wilmette Pumping Station on May 15, 2020 at 5:45 AM. If you have any questions or require additional information, please contact the MWRD Systems Dispatcher at 312-751-5133 or 312-787-3575.

To ensure that you continue to receive these emails, please add mail@notify.onecallnow.com to your Email Address Book.

To unsubscribe to notifications from **Metropolitan Water Reclamation District of Greater Chicago**, please click here.

Message delivered to you by One Call Now. If you have any questions or are interested in the notification services provided by One Call Now for schools, employers, property managers, religious groups, sports teams, and businesses, please visit our web site www.onecallnow.com or contact our friendly Client Services Folks at 1-877-698-3262.

View our privacy policy.

© 2007 - 2020 - One Call Now

1

**Staudacher, Ed**

| | |
|---|---|
| **From:** | MWRD Disptach <mail@notify.onecallnow.com> |
| **Sent:** | Monday, May 18, 2020 8:42 PM |
| **To:** | Robertson, Cedric |
| **Subject:** | Lake Michigan Reversal Notification / End of reversal |

Notification from: **Metropolitan Water Reclamation District of Greater Chicago**

The MWRD stopped reversing the flow of the Chicago Area Waterways to Lake Michigan at Wilmette on May 18, 2020 at 8:15 PM. If you have any questions or require additional information, please contact the MWRD Systems Dispatcher at 312-751-5133 or 312-787-3575.

To ensure that you continue to receive these emails, please add mail@notify.onecallnow.com to your Email Address Book.

To unsubscribe to notifications from **Metropolitan Water Reclamation District of Greater Chicago**, please click here.

Message delivered to you by One Call Now. If you have any questions or are interested in the notification services provided by One Call Now for schools, employers, property managers, religious groups, sports teams, and businesses, please visit our web site www.onecallnow.com or contact our friendly Client Services Folks at 1-877-698-3262.

View our privacy policy.

© 2007 - 2020 - One Call Now



1

FILED DATE: 5/14/2021 10:35 AM 2021L004971

FILED DATE: 5/14/2021 10:35 AM   2021L004971

Mr. Callaway                                                                    May 22, 2020
Reversal to Lake Michigan
May 17-18, 2020

2

If further information is required, please contact Ms. Ann Ko, Principal Engineer, at 312.751.6553.

Sincerely,

John P. Murray

John P. Murray

EJS:BK:AK

c:  Patel, IEPA, Des Plaines Office
    Perkovich/Podczerwinski/O'Connor/Conway/Serafino

FILED DATE: 5/14/2021 10:35 AM  2021L004971

MWRD_2020_09_02-000044

**Staudacher, Ed**

| | |
|---|---|
| **From:** | MWRD Disptach <mail@notify.onecallnow.com> |
| **Sent:** | Monday, May 18, 2020 8:42 PM |
| **To:** | Robertson, Cedric |
| **Subject:** | Lake Michigan Reversal Notification / End of reversal |

Notification from: **Metropolitan Water Reclamation District of Greater Chicago**

The MWRD stopped reversing the flow of the Chicago Area Waterways to Lake Michigan at Wilmette on May 18, 2020 at 8:15 PM. If you have any questions or require additional information, please contact the MWRD Systems Dispatcher at 312-751-5133 or 312-787-3575.

To ensure that you continue to receive these emails, please add mail@notify.onecallnow.com to your Email Address Book.

To unsubscribe to notifications from **Metropolitan Water Reclamation District of Greater Chicago**, please click here.

Message delivered to you by One Call Now. If you have any questions or are interested in the notification services provided by One Call Now for schools, employers, property managers, religious groups, sports teams, and businesses, please visit our web site www.onecallnow.com or contact our friendly Client Services Folks at 1-877-698-3262.

View our privacy policy.

© 2007 - 2020 - One Call Now



FILED DATE: 5/14/2021 10:35 AM 2021L004971

1

**Staudacher, Ed**

| | |
|---|---|
| **From:** | MWRD Disptach <mail@notify.onecallnow.com> |
| **Sent:** | Friday, May 15, 2020 6:27 AM |
| **To:** | Staudacher, Ed |
| **Subject:** | Lake Michigan Reversal Notification |

Notification from: **Metropolitan Water Reclamation District of Greater Chicago**

The MWRD <u>stopped</u> reversing the flow of the Chicago Area Waterways to Lake Michigan at the Wilmette Pumping Station on May 15, 2020 at 5:45 AM. If you have any questions or require additional information, please contact the MWRD Systems Dispatcher at 312-751-5133 or 312-787-3575.

To ensure that you continue to receive these emails, please add mail@notify.onecallnow.com to your Email Address Book.

To unsubscribe to notifications from **Metropolitan Water Reclamation District of Greater Chicago**, please click here.

Message delivered to you by One Call Now. If you have any questions or are interested in the notification services provided by One Call Now for schools, employers, property managers, religious groups, sports teams, and businesses, please visit our web site www.onecallnow.com or contact our friendly Client Services Folks at 1-877-698-3262.

View our privacy policy.

© 2007 - 2020 - One Call Now

FILED DATE: 5/14/2021 10:35 AM 2021L004971

1

MWRD_2020_09_02-000046

**Staudacher, Ed**

| | |
|---|---|
| **From:** | CSOwebmaster |
| **Sent:** | Monday, May 18, 2020 1:21 AM |
| **To:** | CSOwebmaster |
| **Subject:** | MWRD Lake Michigan CSO at Chicago River Controlling Works |

Hello:

There has been an update to the Metropolitan Water Reclamation District of Greater Chicago's CSO Events website. A discharge into Lake Michigan has occurred at the Chicago River Controlling Works. This facility is located where the Chicago River meets Lake Michigan, just South of Navy Pier, in Chicago, IL. The lakefront in this area is potentially impacted. Please visit our CSO GeoHub for more information or contact 312-751-5133 with questions. Thanks, Webmaster

You are receiving this because you have signed up for CSO event notification. If you believe you received this in error, you can unsubscribe from MWRD CSO notification system.

V3.0

FILED DATE: 5/14/2021 10:35 AM    2021L004971

1

MWRD_2020_09_02-000047

FILED DATE: 5/14/2021 10:35 AM    2021L004971

**Staudacher, Ed**

| | |
|---|---|
| **From:** | CSOwebmaster |
| **Sent:** | Monday, May 18, 2020 1:21 AM |
| **To:** | CSOwebmaster |
| **Subject:** | MWRD Lake Michigan CSO at Wilmette Gate |

Hello:

There has been an update to the Metropolitan Water Reclamation District of Greater Chicago's CSO Events website. A discharge into Lake Michigan has occurred at the Wilmette Gates. This facility is located at Sheridan Road and the North Shore Channel in Wilmette, IL. The lakefront in this area is potentially impacted. Please visit our CSO GeoHub for more information or contact 312-751-5133 with questions. Thanks,
Webmaster

You are receiving this because you have signed up for CSO event notification. If you believe you received this in error, you can unsubscribe from MWRD CSO notification system.

V3.0

MWRD_2020_09_02-000048

**Staudacher, Ed**

| | |
|---|---|
| **From:** | CSOwebmaster |
| **Sent:** | Friday, May 15, 2020 3:18 AM |
| **To:** | CSOwebmaster |
| **Subject:** | MWRD Lake Michigan CSO at Wilmette Gate |

Hello:

There has been an update to the Metropolitan Water Reclamation District of Greater Chicago's CSO Events website. A discharge into Lake Michigan has occurred at the Wilmette Gates. This facility is located at Sheridan Road and the North Shore Channel in Wilmette, IL. The lakefront in this area is potentially impacted. Please visit our CSO GeoHub for more information or contact 312-751-5133 with questions. Thanks,
Webmaster

You are receiving this because you have signed up for CSO event notification. If you believe you received this in error, you can unsubscribe from MWRD CSO notification system.

V3.0

FILED DATE: 5/14/2021 10:35 AM    2021L004971

MWRD_2020_09_02-000049

**Staudacher, Ed**

| | |
|---|---|
| From: | Robertson, Cedric |
| Sent: | Wednesday, May 20, 2020 2:03 PM |
| To: | Staudacher, Ed; Levy, Brian |
| Cc: | Parnell, Steven |
| Subject: | RE: Reversal 5-17 |
| Attachments: | Lake Michigan Reversal Notification / End of reversal; Lake Michigan Reversal Notification; Lake Michigan Reversal Notification; Lake Michigan Reversal Notification |

Ed,

Sir,

See attached and below.

**Wilmette PS:**
Start – 5/17 – 3:45 pm
Stop – 5/18 – 8:15 pm

**CRCW:**
Start – 5/17 – 7:20 pm
Stop – 5/18 - 11:45 am

Brian,

Sir,

Please confirm that the above times match the System Dispatcher's Log Sheet. If different, please correct.

Thanks,

Cedric.

From: Staudacher, Ed <StaudacherE@mwrd.org>
Sent: Wednesday, May 20, 2020 1:51 PM
To: Robertson, Cedric <RobertsonC@mwrd.org>
Subject: Reversal 5-17

What are start and stop times for reversal on 5/17-18

1

FILED DATE: 5/14/2021 10:35 AM   2021L004971

FILED DATE: 5/14/2021 10:35 AM   2021L004971

**INTEROFFICE MEMORANDUM**

**METROPOLITAN WATER RECLAMATION DISTRICT**
**OF GREATER CHICAGO**

**DEPARTMENT:** General Administration          **DATE:** May 28, 2020

**TO:**          President Steele and Members of the Board of Commissioners

**FROM:**        Brian A. Perkovich, Executive Director *Brian Perkovich*

**SUBJECT:**    Response to the Board of Commissioners Question from the May 21, 2020, Board Meeting Regarding the Water Discharged to Lake Michigan During the Recent Storm Event and Other Pertinent Information

In response to a request from the Board of Commissioners at the May 21, 2020 Board Meeting, the following is offered regarding a statistical report of the recent storm event showing the quantity of water discharged to Lake Michigan from the Chicago Area Waterway System (CAWS) (backflow) and other pertinent information associated with water quality of the water discharged to the lake.

According to the Metropolitan Water Reclamation District of Greater Chicago's COLLECTION SYSTEM OPERATION AND MAINTENANCE MANUAL, Appendix 3D, LAKE MICHIGAN BACKFLOW SAMPLING PROTOCOLS, the Monitoring and Research Department monitors the water quality of the water discharged to Lake Michigan during a backflow event at any of the three locations. These locations are the mouths of the Chicago River and the Calumet River (discharging from either the O'Brien Lock and Dam on the Calumet River, the 122nd Street Pumping Station, or the 95th Street Pumping Station), and the gate structure at Wilmette at the lake end of the North Shore Channel. The procedures call for conducting sampling during the regular working periods, i.e. Monday through Friday between the hours of 7:00 a.m. and 3:30 p.m. except for holidays. For holidays, weekend or later night storm-related backflow, the sampling will be scheduled on the following regular workday. During the Chicago Park District's beach recreation season, nearby beaches will also be sampled for bacteria counts. Recently, severe storms triggered three backflow events on May 15 and 17-18, 2020. A monitoring report for these three events is attached for your information.

If you require additional information, please contact me.

EWP:HZ:ps
Attachment
cc:    Mr. J. Joiner

FILED DATE: 5/14/2021 10:35 AM 2021L004971

# MONITORING REPORT ON EVENTS OF BACKFLOW FROM THE CHICAGO AREA WATERWAY SYSTEM TO LAKE MICHIGAN

Lake Michigan and the inland Chicago Area Waterway System (CAWS) are separated by locks at the mouth of the Chicago River and on the Calumet River and the gate structure at Wilmette connecting to the Chicago River via the North Shore Channel. At these locations, gate structures control the amount of water withdrawn from the lake, when the water surface elevation is typically higher than that in the river and also allow release of excess river water into the lake when the water surface elevation in the river exceeds the lake. Under severe storm events when the CAWS receives excess flow which cannot be stored in the Tunnel and Reservoir Plan System, it becomes necessary to open the locks and reverse the flow to Lake Michigan (backflow). On May 15 and 17–18, 2020, the Metropolitan Water Reclamation District of Greater Chicago (District) was forced to divert water from the CAWS to Lake Michigan. During backflow events, the District conducts water quality monitoring to assess the effects of sending backflow from the CAWS to the lake. In accordance with the District's Lake Michigan backflow sampling protocols (SPs), the samples are analyzed for general chemistry (pH, five-day biological oxygen demand and suspended solids) and *Escherichia coli* (*E. coli*) bacteria.

**May 15, 2020, Event**

On May 15, 2020, a lake backflow event began at 0230 hours at Wilmette Harbor. The backflow event ended at 0545 hours. The total amount of river water released to the lake during the event was 50.1 million gallons. The total rainfall recorded for the area included the Terrence J. O'Brien (O'Brien) Water Reclamation Plant (WRP) - 1.63 inches, North Branch Pumping Station - 1.65 inches, and Wilmette Pumping Station — 1.64 inches. Samples were collected during regular working hours that morning at Wilmette Harbor Mouth and Wilmette Harbor Pumping Station. The water quality results for these locations are presented in Table 1.

**May 17–18, 2020, Event**

Two backflow events occurred from May 17 to May 18, 2020, at Wilmette Harbor and the Chicago River Controlling Works. An event occurred at Wilmette Harbor beginning at 1545 hours on May 17, 2020. The event ended at 2015 hours May 18, 2020. The total amount of river water released to the lake during the event was 848.1 million gallons. The total rainfalls recorded in the area for the period May 17–18, 2020, were 3.18 inches at the O'Brien WRP, 3.89 inches at North Branch Pumping Station, and 3.77 inches at Wilmette Pumping Station. Samples were collected at Wilmette Harbor Mouth and Wilmette Harbor Pumping Station during this event. The water quality results from this sampling are presented in Table 2.

The second backflow event occurred at Chicago River Controlling Works from May 17, 2020, at 1920 hours to May 18, 2020, at 1141 hours. The total amount of river water released to the lake during the event was 1,731.6 million gallons. The total rainfalls recorded in the area were 3.9 inches at the Stickney WRP and 2.83 inches at the District's Main Office Building. Samples were collected at DuSable Harbor Sluice Gates and the Inner Harbor Sluice Gates. The water quality results from this sampling are also reported in Table 2.

MWRD_2020_09_02-000052

FILED DATE: 5/14/2021 10:35 AM   2021L004971

In accordance with the District's SPs, no beach sampling was conducted because the events occurred outside of the Chicago Park District's beach recreation season.

2

FILED DATE: 5/14/2021 10:35 AM    2021L004971

MWRD_2020_09_02-000054

TABLE 1: BACKFLOW MONITORING RESULTS FOR SAMPLES COLLECTED
NEAR WILMETTE HARBOR ON MAY 15, 2020

| LIMS Number | Sample Date | Sample Time[1] | Sample Point | pH | BOD[2] mg/L | SS[3] mg/L | E. coli[4] MPN/100mL |
|---|---|---|---|---|---|---|---|
| 8728068 | 5/15/2020 | 0955 | Wilmette Pumping Station_WILHBR1 | 7.0 | <2 | 29 | 5,980 |
| 8728069 | 5/15/2020 | 1015 | Wilmette Harbor Mouth_WILHBR2 | 7.0 | <2 | 16 | 1,090 |

[1]Military Time.
[2]BOD₅: *Standard Methods for the Examination of Water and Wastewater*, 23rd Edition, Biochemical Oxygen Demand, SM 5210 B (2011).
[3]SS (suspended solids): *Standard Methods for the Examination of Water and Wastewater*, 23rd Edition, Total Suspended Solids, SM 2540 D (2011).
[4]*Escherichia coli*: *Standard Methods for the Examination of Water and Wastewater*, Online Edition, Most Probable Number (MPN) Method 9223B (Quanti-Tray/2000).

FILED DATE: 5/14/2021 10:35 AM   2021L004971

TABLE 2: BACKFLOW MONITORING RESULTS FOR SAMPLES COLLECTED NEAR WILMETTE HARBOR AND
CHICAGO RIVER ON MAY 18, 2020

| LIMS Number | Sample Date | Sample Time[1] | Sample Point | pH | BOD$_5$[2] mg/L | SS[3] mg/L | E. coli[4] MPN/100mL |
|---|---|---|---|---|---|---|---|
| 8729551 | 05/18/2020 | 1155 | Wilmette Pumping Station_WILHBR1 | 7 | <2 | 10 | 6,130 |
| 8729552 | 05/18/2020 | 1215 | Wilmette Harbor Mouth_WILHBR2 | 7 | <2 | 14 | 2,750 |
| 8729536 | 05/18/2020 | 1140 | DuSable Harbor Sluice Gates_CHGHBR1 | 6 | 3 | 18 | 19,900 |
| 8728532 | 05/18/2020 | 1115 | Inner Harbor Sluice Gates_CHGHBRB | 6 | 3 | 12 | 18,600 |

[1]Military Time;
[2]BOD$_5$: Standard Methods for the Examination of Water and Wastewater, 23rd Edition, Biochemical Oxygen Demand, SM 5210 B (2011);
[3]SS (suspended solids): Standard Methods for the Examination of Water and Wastewater, 23rd Edition, Total Suspended Solids, SM 2540 D (2011);
[4]Escherichia coli: Standard Methods for the Examination of Water and Wastewater, Online Edition, Most Probable Number (MPN) Method 9223B (Quanti-Tray/2000).

4

MWRD_2020_09_02-000055

FILED DATE: 5/14/2021 10:35 AM   2021L004971

# Metropolitan Water Reclamation District of Greater Chicago

## M&O DEPARTMENT - WATERWAYS CONTROL SECTION

DISPATCHERS DAILY RECORD ON: _____ (DAY) _____ (DATE) MAY 1 1 2020



MWRD_2020_09_02-000202

FILED DATE: 5/14/2021 10:35 AM   2021L004971

# METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO
## M&O DEPARTMENT - WATERWAYS CONTROL SECTION

DISPATCHER'S DAILY RECORD ON:   (DAY)  *Friday*   (DATE)  MAY 1 5 2020



MWRD_2020_09_02-000203

FILED DATE: 5/14/2021 10:35 AM   20211L004971

# METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO
## M&O DEPARTMENT - WATERWAYS CONTROL SECTION

DISPATCHERS DAILY RECORD ON: (DAY) Saturday (DATE)

**SHIFT / DISPATCHER**

| SHIFT | DISPATCHER |
|---|---|
| MIDNIGHTS | |
| DAYS | |
| AFTERNOONS | |

**WILMETTE**

PUMPS · CHANNEL GATES · REVERSAL GATES

**LOCKPORT POWERHOUSE**

HYDRO GENERATORS · PENSTOCK PIT GATE · LIFO

DISCHARGE / TIME
4000 Mid
2500 12:10P
???? 5:54A

**NORTH SIDE BLOWERS**

**SOUTHWEST BLOWERS**

**CALUMET BLOWERS**

**CHICAGO RIVER CONTROLLING WORKS**

NORTH SLUICE GATES · SOUTH SLUICE GATES · LOCK

**O'BRIEN LOCK & DAM**

SLUICE GATES · LOCK

**CONTROLLING WORKS** — GATES

**NORTH BRANCH** — NORTH SIDE PUMPS

**RACINE PUMPS**

**SOUTHWEST PUMPS**

**WESTSIDE PUMPS**

**CALUMET PUMPS**

LOW-LEVEL · HIGH-LEVEL

95TH ST P.S. · 122ND ST P.S. · 125TH ST P.S.

ACTIVATED / DEACTIVATED

MWRD_2020_09_02-000204

FILED DATE: 5/14/2021 10:35 AM 20211.004971

# METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO
## M&O DEPARTMENT - WATERWAYS CONTROL SECTION

DISPATCHERS DAILY RECORD ON: _____ (DAY) Sunday _____ (DATE) MAY 17 2020



MWRD_2020_09_02-000205

FILED DATE: 5/14/2021 10:35 AM   2021L004971

## METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO
### M&O DEPARTMENT - WATERWAYS CONTROL SECTION

DISPATCHERS DAILY RECORD ON: (DAY) _Monday_

**WILLMETTE**

**CHICAGO RIVER CONTROLLING WORKS**

**OTHER LOCK & DAM**

**NORTH BRANCH**

**SHIFT**

**DISPATCHER**

**NORTHSIDE PUMPS**

**LOCKPORT POWERHOUSE**

**CONTROLLING WORKS**

**CALUMET BLOWERS**

**CALUMET PUMPS**

**WESTSIDE PUMPS**

**RACINE PUMPS**

**NORTH SIDE BLOWERS**

**SOUTHWEST BLOWERS**

**125TH ST PA.**

**122 YD. ST PA.**

**95TH ST PA.**

MWRD_2020_09_02-000206



BOARD OF COMMISSIONERS
Kari K. Steele
*President*
Barbara J. McGowan
*Vice President*
Frank Avila
*Chairman of Finance*
Cameron Davis
Kimberly Du Buclet
Marcelino Garcia
Joshua Morita
Debra Shore
Mariyana T. Spyropoulos

**Metropolitan Water Reclamation District of Greater Chicago**

100 EAST ERIE STREET     CHICAGO, ILLINOIS 60611-3154     312.751.5600

May 20, 2020

Mr. Roger Callaway
Compliance Assurance Section
Illinois Environmental Protection Agency
1021 N. Grand Ave. East
P.O. Box 19276
Springfield, IL 62794-9276

Subject:     Reversal to Lake Michigan
             May 15, 2020

Dear Mr. Callaway:

This letter confirms the telephone conversation with Mr. Jay Patel of your Des Plaines office on May 15, 2020 regarding the subject incident.

Due to the excessive amounts of rainfall experienced in the Chicagoland area on May 14-15, 2020, the Metropolitan Water Reclamation District of Greater Chicago (MWRDGC), in order to prevent catastrophic flooding, had no other alternative but to open the gate at Wilmette, thereby releasing flow from the North Shore Channel to Lake Michigan as summarized below:

| Location | Discharging Stream | Minimum Stream Elevation Post-Drawdown (CCD) | Peak Stream Elevation (CCD) | Start Time | End Time | Discharge (MG) |
|---|---|---|---|---|---|---|
| Wilmette | North Shore Channel | -1.59 | 4.94 | 2:40 a.m. (5/15/20) | 5:20 a.m. (5/15/20) | 50.1 |

This incident occurred due to rainfall in the amount of 2.94 inches in the North Basin Area, on May 14-15, 2020. If further information is required, please contact Ms. Ann Ko, Principal Engineer, at 312.751.6553.

Sincerely,

*John P. Murray*

John P. Murray

EJS:BK:AK

c:    Patel, IEPA, Des Plaines Office
      Perkovich/Podczerwinski/O'Connor/Conway/Serafino

FILED DATE: 5/14/2021 10:35 AM     2021L004971

**INTEROFFICE MEMORANDUM**

**METROPOLITAN WATER RECLAMATION DISTRICT**
**OF GREATER CHICAGO**

**DEPARTMENT:** General Administration      **DATE:** May 28, 2020

**TO:**      President Steele and Members of the Board of Commissioners

**FROM:**      Brian A. Perkovich, Executive Director

**SUBJECT:**      Response to the Board of Commissioners Question from the May 21, 2020, Board Meeting Regarding the Water Discharged to Lake Michigan During the Recent Storm Event and Other Pertinent Information

In response to a request from the Board of Commissioners at the May 21, 2020 Board Meeting, the following is offered regarding a statistical report of the recent storm event showing the quantity of water discharged to Lake Michigan from the Chicago Area Waterway System (CAWS) (backflow) and other pertinent information associated with water quality of the water discharged to the lake.

According to the Metropolitan Water Reclamation District of Greater Chicago's COLLECTION SYSTEM OPERATION AND MAINTENANCE MANUAL, Appendix 3D, LAKE MICHIGAN BACKFLOW SAMPLING PROTOCOLS, the Monitoring and Research Department monitors the water quality of the water discharged to Lake Michigan during a backflow event at any of the three locations. These locations are the mouths of the Chicago River and the Calumet River (discharging from either the O'Brien Lock and Dam on the Calumet River, the 122nd Street Pumping Station, or the 95th Street Pumping Station), and the gate structure at Wilmette at the lake end of the North Shore Channel. The procedures call for conducting sampling during the regular working periods, i.e. Monday through Friday between the hours of 7:00 a.m. and 3:30 p.m. except for holidays. For holidays, weekend or later night storm-related backflow, the sampling will be scheduled on the following regular workday. During the Chicago Park District's beach recreation season, nearby beaches will also be sampled for bacteria counts. Recently, severe storms triggered three backflow events on May 15 and 17–18, 2020. A monitoring report for these three events is attached for your information.

If you require additional information, please contact me.

EWP:HZ:ps
Attachment
cc: Mr. J. Joiner

FILED DATE: 5/14/2021 10:35 AM    2021L004971

FILED DATE: 5/14/2021 10:35 AM 2021L004971

# MONITORING REPORT ON EVENTS OF BACKFLOW FROM THE CHICAGO AREA WATERWAY SYSTEM TO LAKE MICHIGAN

Lake Michigan and the inland Chicago Area Waterway System (CAWS) are separated by locks at the mouth of the Chicago River and on the Calumet River and the gate structure at Wilmette connecting to the Chicago River via the North Shore Channel. At these locations, gate structures control the amount of water withdrawn from the lake, when the water surface elevation is typically higher than that in the river and also allow release of excess river water into the lake when the water surface elevation in the river exceeds the lake. Under severe storm events when the CAWS receives excess flow which cannot be stored in the Tunnel and Reservoir Plan System, it becomes necessary to open the locks and reverse the flow to Lake Michigan (backflow). On May 15 and 17–18, 2020, the Metropolitan Water Reclamation District of Greater Chicago (District) was forced to divert water from the CAWS to Lake Michigan. During backflow events, the District conducts water quality monitoring to assess the effects of sending backflow from the CAWS to the lake. In accordance with the District's Lake Michigan backflow sampling protocols (SPs), the samples are analyzed for general chemistry (pH, five-day biological oxygen demand and suspended solids) and *Escherichia coli* (*E. coli*) bacteria.

## May 15, 2020, Event

On May 15, 2020, a lake backflow event began at 0230 hours at Wilmette Harbor. The backflow event ended at 0545 hours. The total amount of river water released to the lake during the event was 50.1 million gallons. The total rainfall recorded for the area included the Terrence J. O'Brien (O'Brien) Water Reclamation Plant (WRP) - 1.63 inches, North Branch Pumping Station - 1.65 inches, and Wilmette Pumping Station – 1.64 inches. Samples were collected during regular working hours that morning at Wilmette Harbor Mouth and Wilmette Harbor Pumping Station. The water quality results for these locations are presented in Table 1.

## May 17-18, 2020, Event

Two backflow events occurred from May 17 to May 18, 2020, at Wilmette Harbor and the Chicago River Controlling Works. An event occurred at Wilmette Harbor beginning at 1545 hours on May 17, 2020. The event ended at 2015 hours May 18, 2020. The total amount of river water released to the lake during the event was 848.1 million gallons. The total rainfalls recorded in the area for the period May 17–18, 2020, were 3.18 inches at the O'Brien WRP, 3.89 inches at North Branch Pumping Station, and 3.77 inches at Wilmette Pumping Station. Samples were collected at Wilmette Harbor Mouth and Wilmette Harbor Pumping Station during this event. The water quality results from this sampling are presented in Table 2.

The second backflow event occurred at Chicago River Controlling Works from May 17, 2020, at 1920 hours to May 18, 2020, at 1141 hours. The total amount of river water released to the lake during the event was 1,731.6 million gallons. The total rainfalls recorded in the area were 3.9 inches at the Stickney WRP and 2.83 inches at the District's Main Office Building. Samples were collected at DuSable Harbor Sluice Gates and the Inner Harbor Sluice Gates. The water quality results from this sampling are also reported in Table 2.

MWRD_2020_09_02-000245

FILED DATE: 5/14/2021 10:35 AM   2021L004971

In accordance with the District's SPs, no beach sampling was conducted because the events occurred outside of the Chicago Park District's beach recreation season.

MWRD_2020_09_02-000246

FILED DATE: 5/14/2021 10:35 AM   2021L004971

MWRD_2020_09_02-000247

## TABLE J: BACKFLOW MONITORING RESULTS FOR SAMPLES COLLECTED NEAR WILMETTE HARBOR ON MAY 15, 2020

| LIMS Number | Sample Date | Sample Time[1] | Sample Point | pH | $BOD_5$[2] mg/L | SS[3] mg/L | E. coli[4] MPN/100mL |
|---|---|---|---|---|---|---|---|
| 8728068 | 5/15/2020 | 0955 | Wilmette Pumping Station_WILHBR1 | 7.0 | <2 | 29 | 5,980 |
| 8728069 | 5/15/2020 | 1015 | Wilmette Harbor Mouth_WILHBR2 | 7.0 | <2 | 16 | 1,090 |

[1]Military Time;
[2]$BOD_5$: Standard Methods for the Examination of Water and Wastewater, 23rd Edition, Biochemical Oxygen Demand, SM 5210 B (2011)
[3]SS (suspended solids): Standard Methods for the Examination of Water and Wastewater, 23rd Edition, Total Suspended Solids, SM 2540 D (2011);
[4]Escherichia coli: Standard Methods for the Examination of Water and Wastewater, Online Edition, Most Probable Number (MPN) Method 9223B (Quanti-Tray/2000);

3

FILED DATE: 5/14/2021 10:35 AM   2021L004971

MWRD_2020_09_02-000248

TABLE 2: BACKFLOW MONITORING RESULTS FOR SAMPLES COLLECTED NEAR WILMETTE HARBOR AND CHICAGO RIVER ON MAY 18, 2020

| LIMS Number | Sample Date | Sample Time[1] | Sample Point | pH | BOD$_5$[2] mg/L | SS[3] mg/L | E. coli[4] MPN/100 mL |
|---|---|---|---|---|---|---|---|
| 8729551 | 05/18/2020 | 1155 | Wilmette Pumping Station_WILHBR1 | 7 | <2 | 10 | 6,130 |
| 8729552 | 05/18/2020 | 1215 | Wilmette Harbor Mouth_WILHBR2 | 7 | <2 | 14 | 2,750 |
| 8729536 | 05/18/2020 | 1140 | DuSable Harbor Sluice Gates_CHGHBR1 | 6 | 3 | 18 | 19,900 |
| 8728532 | 05/18/2020 | 1115 | Inner Harbor Sluice Gates_CHGHBR3 | 6 | 3 | 12 | 18,600 |

[1] Military Time.
[2] BOD$_5$: *Standard Methods for the Examination of Water and Wastewater*, 21st Edition, Biochemical Oxygen Demand, SM 5210 B (2011).
[3] SS (suspended solids): *Standard Methods for the Examination of Water and Wastewater*, 23rd Edition, Total Suspended Solids, SM 2540 D (2011).
[4] *Escherichia coli*: *Standard Methods for the Examination of Water and Wastewater*, Online Edition, Most Probable Number (MPN) Method 9223B (Quanti-Tray 2000).

4

FILED DATE: 5/14/2021 10:35 AM    2021L004971



**Protecting Our Water Environment**

BOARD OF COMMISSIONERS
Karl K. Steele
*President*
Barbara J. McGowan
*Vice President*
Frank Avila
*Chairman of Finance*

Cameron Davis
Kimberly Du Buclet
Marcelino Garcia
Josina Morita
Debra Shore
Mariyana T. Spyropoulos

## Metropolitan Water Reclamation District of Greater Chicago

100 EAST ERIE STREET      CHICAGO, ILLINOIS 60611-3154      312.751.5600

May 22, 2020

Mr. Roger Callaway
Compliance Assurance Section
Illinois Environmental Protection Agency
1021 N. Grand Ave. East
P.O. Box 19276
Springfield, IL 62794-9276

Subject:    Reversal to Lake Michigan
            May 17-18, 2020

Dear Mr. Callaway:

This letter confirms the telephone conversation with Mr. Jay Patel of your Des Plaines office on May 18, 2020 regarding the subject incidents.

Due to the excessive amounts of rainfall experienced in the Chicagoland area on May 16-17, 2020, the Metropolitan Water Reclamation District of Greater Chicago (MWRDGC), in order to prevent catastrophic flooding, had no other alternative but to open the gate at Wilmette and the gates and lock at the Chicago River Controlling Works (CRCW), thereby releasing flow from the North Shore Channel and the Chicago River to Lake Michigan as summarized below:

| Location | Discharging Stream | Minimum Stream Elevation Post-Drawdown (CCD) | Peak Stream Elevation (CCD) | Start Time | End Time | Discharge (MG) |
|---|---|---|---|---|---|---|
| Wilmette | North Shore Channel | 0.30 | 6.99 | 3:45 p.m. (5/17/20) | 8:15 p.m. (5/18/20) | 848.1 |
| CRCW | Chicago River | -2.96 | 4.35 | 7:30 p.m. (5/17/20) | 10:10 a.m. (5/18/20) | 1,731.6 |

This incident occurred due to rainfall in the amount of 3.37 inches in the North Basin Area on May 16-17, 2020.

FILED DATE: 5/14/2021 10:35 AM   2021L004971

Mr. Callaway                                              May 22, 2020
Reversal to Lake Michigan
May 17-18, 2020

                                    2

If further information is required, please contact Ms. Ann Ko, Principal Engineer, at 312.751.6553.

                                        Sincerely,

                                        *John P. Murray /ms*

                                        John P. Murray

EJS:BK:AK

c:   Patel, IEPA, Des Plaines Office
     Perkovich/Podczerwinski/O'Connor/Conway/Serafino

MWRD_2020_09_02-000250



**Protecting Our Water Environment**

BOARD OF COMMISSIONERS
Kari K. Steele
*President*
Barbara J. McGowan
*Vice President*
Frank Avila
*Chairman of Finance*
Cameron Davis
Kimberly Du Buclet
Marcelino Garcia
Josina Morita
Debra Shore
Mariyana T. Spyropoulos

### Metropolitan Water Reclamation District of Greater Chicago

100 EAST ERIE STREET        CHICAGO, ILLINOIS  60611-3154        312.751.5600

May 22, 2020

Mr. Roger Callaway
Compliance Assurance Section
Illinois Environmental Protection Agency
1021 N. Grand Ave. East
P.O. Box 19276
Springfield, IL  62794-9276

Subject:   Reversal to Lake Michigan
           May 17-18, 2020

Dear Mr. Callaway:

This letter confirms the telephone conversation with Mr. Jay Patel of your Des Plaines office on May 18, 2020 regarding the subject incidents.

Due to the excessive amounts of rainfall experienced in the Chicagoland area on May 16-17, 2020, the Metropolitan Water Reclamation District of Greater Chicago (MWRDGC), in order to prevent catastrophic flooding, had no other alternative but to open the gate at Wilmette and the gates and lock at the Chicago River Controlling Works (CRCW), thereby releasing flow from the North Shore Channel and the Chicago River to Lake Michigan as summarized below:

| Location | Discharging Stream | Minimum Stream Elevation Post-Drawdown (CCD) | Peak Stream Elevation (CCD) | Start Time | End Time | Discharge (MG) |
|---|---|---|---|---|---|---|
| Wilmette | North Shore Channel | 0.30 | 6.99 | 3:45 p.m. (5/17/20) | 8:15 p.m. (5/18/20) | 848.1 |
| CRCW | Chicago River | -2.96 | 4.35 | 7:30 p.m. (5/17/20) | 10:10 a.m. (5/18/20) | 1,731.6 |

This incident occurred due to rainfall in the amount of 3.37 inches in the North Basin Area on May 16-17, 2020.

FILED DATE: 5/14/2021 10:35 AM   2021L004971

Mr. Callaway
Reversal to Lake Michigan
May 17-18, 2020

May 22, 2020

2

If further information is required, please contact Ms. Ann Ko, Principal Engineer, at 312.751.6553.

Sincerely,

*John P Murray /ESS*

John P. Murray

EJS:BK:AK

c:  Patel, IEPA, Des Plaines Office
    Perkovich/Podczerwinski/O'Connor/Conway/Serafino

FILED DATE: 5/14/2021 10:35 AM  2021L004971

**Metropolitan Water Reclamation District** *of* **Greater Chicago**

# Press Release

Allison Fore
Public and Intergovernmental Affairs Officer
312.751.6626
allison.fore@mwrd.org
100 East Erie Street, Chicago, Illinois 60611

For immediate release
May 18, 2020

## 8:30 a.m. MWRD Storm update

Over the last 96 hours, the Chicago metropolitan area has seen between 6 to 8 inches of rainfall. The levels of rainfall varied across the region with more falling in the northern suburbs and less in the south suburbs. From May 14 to May 17, the National Weather Service reports that 7.88 inches of rain fell at O'Hare and 6.22 inches of rain fell at Midway with higher localized totals across the area. For the entire month of May 2020, 8.19 inches of rain has fallen.

To mitigate the impact of the storm event, we have reversed the flow of the Chicago Area Waterway system to Lake Michigan at the Wilmette Pumping Station and at the Chicago River Controlling Works downtown to minimize overbank flooding. There are several factors we consider when determining to release floodwater to the lake, including the rate the river water level is rising at each lakefront control location, whether the rainfall intensity is continuing or beginning to decrease, and the storm conditions on the radar.

Reversal incidents at each location includes:

- Wilmette Pumping Station reversed from May 15, 2020 at 2:30 a.m. to May 15, 2020 at 5:45 a.m.
- Wilmette Pumping Station started reversing May 17, 2020 at 3:45 p.m. and is still ongoing.
- Chicago River Controlling Works, downtown Chicago, started reversing on May 17, 2020 at 7:20 p.m. and is still ongoing.

The Tunnel and Reservoir Plan is comprised of three systems and all are operating as designed. Combined they are currently holding more than 8 billion gallons. The current status of all TARP tunnels and reservoirs includes:

- McCook TARP System: 100% full, 4.970 billion gallons stored; Comprised of Mainstream Tunnel, Des Plaines Tunnel, and McCook Reservoir
- Calumet TARP System: 36% full, 3.017 billion gallons stored; comprised of Calumet Tunnel and Thornton Composite Reservoir
- Kirie TARP System: Tunnel - 100% full, 71 million gallons stored & Majewski CUP - 243 million gallons stored

Currently the North Shore Channel and the Chicago River are higher than the lake. In order for the MWRD to reverse the flow of the Chicago Area Waterways, the river must be higher than the lake.

The U.S. Army Corps of Engineers provides data on the lake level. This can be found at https://www.lre.usace.army.mil/Missions/Great-Lakes-Information/Great-Lakes-Water-Levels/Water-Level-Forecast/Monthly-Bulletin-of-Great-Lakes-Water-Levels/.

Recovering Resources, Transforming Water
*Established in 1889, the MWRD (www.mwrd.org) is an award-winning, special purpose government agency responsible for wastewater treatment and stormwater management in Cook County, Illinois.*

FILED DATE: 5/14/2021 10:35 AM    2021L004971

| | |
|---|---|
| **From:** | McGregor, Matthew <McGregorM@mwrd.org> |
| **Sent:** | Sunday, May 17, 2020 7:50 PM |
| **To:** | Flintroy, Paula; Elenteny, Matthew; Donnelly, Paul; Rijal, Dev; White, William; Rohe,Tracy |
| **Subject:** | Fwd: SWRP: Afternoon shift |

Please add Cedric to the next few days of status reports beginning with midnight shift tonight. Thanks.

Get Outlook for iOS

**From:** Conway, Thomas <ConwayT2@mwrd.org>
**Sent:** Sunday, May 17, 2020 6:22 PM
**To:** Robertson, Cedric; Cummings, Joseph; McGregor, Matthew
**Subject:** Fwd: SWRP: Afternoon shift

Joe/Matt; Have the TPO3 include Cedric on the next few reports so he has the most up to date info for the Storm Report to BOC.
Thanks, Tom

Get Outlook for iOS

**From:** Rijal, Dev <RijalD@mwrd.org>
**Sent:** Sunday, May 17, 2020 2:43 PM
**To:** An, Weizhe; Conway, Thomas; Cummings, Joseph; El-Naggar, Essam; Flowers, Regina; Grzybowski, Thomas; Hill, Debbra; Hill, Michael; Kollias, Nicholas; Kozak, Joseph; Lyvers, Daniel; McGregor, Matthew; Morgan, Benjamin; Murray, John (Dir of M&O); Patel, Kamlesh; Perkovich, Brian; Qin, Cindy Dongqi; Rivera, James; Ryan, Thomas; Tian, Guanglong; Villegas, Jonathan; Whitehead, Steven; Donnelly, Paul; Elenteny, Matthew; Flintroy, Paula; Rohe,Tracy; White, William
**Cc:** Anderson, Peter; Fitzgerald, Thomas; Maldonado, Joaquin; Peslak, Richard; Pounds, Gregg; Styrczula, Albert
**Subject:** SWRP: Afternoon shift

Plant Flow: 1210 MGD

| TARP Information | Vol | % | CCD |
|---|---|---|---|
| MS Volume | 1196.09 | 100.00% | 1 |
| McCook Volume | 3368.98 | 94.23% | -40 |
| DP Volume | 405.28 | 99.97% | 35 |
| Total Volume | 4970.35 | 96.02% | |
| Dewater Rate | 0 | | |
| % of Plant Flow | 0% | (DP Overflowing) | |

Currently, 9 pumps i/s to River @ RAPS

FILED DATE: 5/14/2021 10:35 AM   2021L004971

| | |
|---|---|
| **From:** | MWRD Disptach <mail@notify.onecallnow.com> |
| **Sent:** | Monday, May 18, 2020 9:42 PM |
| **To:** | Levy, Brian |
| **Subject:** | Lake Michigan Reversal Notification / End of reversal |

Notification from: **Metropolitan Water Reclamation District of Greater Chicago**

The MWRD stopped reversing the flow of the Chicago Area Waterways to Lake Michigan at Wilmette on May 18, 2020 at 8:15 PM. If you have any questions or require additional information, please contact the MWRD Systems Dispatcher at 312-751-5133 or 312-787-3575.

mail@notify.onecallnow.com

click here

www.onecallnow.com

Client Services Folks

privacy policy

One Call

FILED DATE: 5/14/2021 10:35 AM 2021L004971

| From: | MWRD Disptach <mail@notify.onecallnow.com> |
| Sent: | Sunday, May 17, 2020 8:42 PM |
| To: | Levy, Brian |
| Subject: | Lake Michigan Reversal Notification |

Notification from: **Metropolitan Water Reclamation District of Greater Chicago**

The MWRD started reversing the flow of the Chicago Area Waterways to Lake Michigan at the Chicago River Controlling Works on May 17, 2020 at 7:20 PM. If you have any questions or require additional information, please contact the MWRD Systems Dispatcher at 312-751-5133 or 312-787-3575.

mail@notify.onecallnow.com

click here

Client Services Folks

www.onecallnow.com

privacy policy

One Call

| | |
|---|---|
| **From:** | MWRD Disptach <mail@notify.onecallnow.com> |
| **Sent:** | Sunday, May 17, 2020 5:04 PM |
| **To:** | Levy, Brian |
| **Subject:** | Lake Michigan Reversal Notification |

Notification from: **Metropolitan Water Reclamation District of Greater Chicago**

The MWRD started reversing the flow of the Chicago Area Waterways to Lake Michigan at the Wilmette Pumping Station on May 17, 2020 at 3:45 PM. If you have any questions or require additional information, please contact the MWRD Systems Dispatcher at 312-751-5133 or 312-787-3575.

mail@notify.onecallnow.com

click here

Client Services Folks

www.onecallnow.com

privacy policy

One Call

FILED DATE: 5/14/2021 10:35 AM    2021L004971

MWRD_2020_09_02-000368

FILED DATE: 5/14/2021 10:35 AM   2021L004971

| | |
|---|---|
| **From:** | Peslak, Richard <PeslakR@mwrd.org> |
| **Sent:** | Monday, May 18, 2020 9:57 PM |
| **To:** | Bee, George; Cech, Martin; Kalata, Brian; Levy, Brian; Podgorny, Robert |
| **Cc:** | Gallagher, Dustin; Kollias, Nicholas; Wasik, Jennifer |

Wilmette reversal over @ 8:15 PM 5/18/20

Richard J Peslak
System Dispatcher, MWRDGC
312-787-3575

Appearance/Jury Demand _____ (05/03/21) CCL 0530

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

Travelers Property Casualty Company of America

_____

**Plaintiff**

**v.**

Metropolitan Water Reclamation District of Greater
Chicago, City of Chicago

_____

**Defendant**

**Case No.** 2021L004971

**Calendar:** D _____

## APPEARANCE/JURY DEMAND

☑ **General Appearance**

○ 0900 - Appearance - Fee Paid

○ 0909 - Appearance- No Fee

○ 0904 - Appearance Filed - Fee Waived

☐ **Jury Demand**

○ 1900 - Appearance & Jury Demand - Fee Paid

○ 1909 - Appearance & Jury Demand - No Fee

The undersigned enters the appearance of:   ○ **Plaintiff**   ● **Defendant**

○ **Additional Party**

○ **Respondent-in-discovery**

City of Chicago

_____

_____

**Litigant's Name**

/s/ Jordan A. Rosen
_____

**Signature**

☑ **INITIAL COUNSEL OF RECORD**          ☐ **PRO SE**
☐ **ADDITIONAL APPEARANCE**          ☐ **SUBSTITUTE APPEARANCE**

A copy of this appearance shall be given to all parties who have appeared and have not been
found by the Court to be in default.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

**Appearance/Jury Demand**                                        **(05/03/21) CCL 0530**

---

◉ **Atty. No.:** 90909          ○ **Pro Se 99500**

**Name:** Jordan A. Rosen

**Atty. for (if applicable):**

Defendant City of Chicago

**Address:** 2 N. LaSalle St., Suite 520

**City:** Chicago

**State:** IL    **Zip:** 60602

**Telephone:** 312-744-9018

**Primary Email:** Jordan.Rosen@cityofchicago.org

**Pro Se Only:**

☐   **I have read and agree to the terms of the Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:**

_____

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 21-cv-3537 |
| v. | ) ) | |
| METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO, CITY OF CHICAGO, | ) ) ) ) | |
| Defendants. | ) ) | |

## CONSENT TO REMOVAL

Defendant Metropolitan Water Reclamation District of Greater Chicago ("MWRD") hereby consents to the removal of *Travelers Property Casualty Company of America v. Metropolitan Water Reclamation District of Greater Chicago, et al.*, Case No. 2021-L-004971 (Ill. Cir. Ct.) ("the Lawsuit") and, in support thereof, states as follows:

1.     MWRD is a Defendant in the Lawsuit and was served with a Summons and copy of the Complaint on June 4, 2021.

2.     Counsel for the City of Chicago ("City") advised MWRD's counsel that the City intended to file a Notice of Removal and requested the MWRD's consent to do so.

3.     Accordingly, MWRD consents to the removal of the Lawsuit from the Circuit Court of Cook County, Illinois, County Department, Law Division, to the United States District Court for the Northern District of Illinois.

1

WHEREFORE Defendant Metropolitan Water Reclamation District of Greater Chicago hereby consents to the removal of the Lawsuit from the Circuit Court of Cook County, Illinois, County Department, Law Division, to the United States District Court for the Northern District of Illinois.

Date:   July 2, 2021

METROPOLITAN WATER RECLAMATION
DISTRICT OF GREATER CHICAGO


By:＿＿/s/ Susan T. Morakalis＿＿＿＿＿＿
　　　General Counsel

Susan T. Morakalis
Jorge T. Mihalopoulos
Anastasios T. Foukas
J. Mark Powell
Metropolitan Water Reclamation
District of Greater Chicago
100 E. Erie St.
Chicago, IL 60611-3154
(312) 751-5929
morakaliss@mwrd.org
mihalopouloj@mwrd.org
foukasa@mwrd.org
powellj@mwrd.org